2005-NMCA-053

113 P.3d 360

**ALLIANCE HEALTH OF SANTA TERE-SA, INC., d/b/a Alliance Hospital of Santa Teresa and Alliance Behavioral Health Services of Southern New Mexico, Inc. d/b/a The Adolescent Pointe, Artc, Plaintiffs–Appellants,**

v.

**NATIONAL PRESTO INDUSTRIES, INC. and The Araz Group, John Doe No. 1, Mary Roe, and John Doe No. 2, Defendants–Appellees.**

No. 23,301.

Court of Appeals of New Mexico.

March 29, 2005.

Colbert N. Coldwell, Enrique Palomares, Guevara, Rebe, Baumann, Coldwell & Reedman, LLP, El Paso, TX, for Appellants.

Alice Tomlinson Lorenz, James J. Widland, Miller Stratvert, P.A., Albuquerque, NM, for Appellee, National Presto Industries, Inc.

CaraLyn Banks, Barney James Reeves, Reeves, Chavez, Albers, Anderson & Montes, P.A., Las Cruces, NM, for Appellee, Araz Group.

## OPINION

KENNEDY, Judge.

{1} Alliance Health of Santa Teresa, Inc. and its affiliates (Alliance) appeals the district court's dismissal of its claim for monetary damages against Defendants National Presto Industries, Inc. (National Presto) and The Araz Group (Araz) (collectively, Defendants). In the course of litigation, dismissals of various claims against Defendants occurred at different times. Despite an early dismissal of claims against Araz, Araz continued to act as a party in the case, and we hold that its active role in the proceedings preserved Alliance's ability to timely appeal.

{2} In this opinion, we hold that a third-party healthcare provider is not preempted by the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1144 (2000)

(ERISA), from seeking payment of claims based on theories sounding in contract and promissory estoppel under state law. In short, where such a party alleges that the insurer or its agent promised payment of claims to a provider, that promise stands independently, and can support a lawsuit that ERISA does not preempt to collect the promised funds. Accordingly, we reverse the grant of Defendants' motions to dismiss Alliance's state law claims owing to ERISA preemption, and remand for further proceedings.

{3} The controversy in this case is whether National Presto, Araz, or both, are obligated to pay for hospital services that Alliance rendered to a patient, and if so, how much. The question with which we are presented is whether a third-party health care provider such as Alliance can maintain an action under state law against entities that provide and administer health insurance for services provided to an insured based on the insurer's promises to pay or whether such state claims are preempted by ERISA.

{4} ERISA preemption has been generously called a "quagmire of conflicting precedent." *Forest Springs Hosp. v. Ill. New Car & Truck Dealers Ass'n*, 812 F.Supp. 729, 733 (S.D.Tex.1993). One commentator describes the area as one in which "courts cannot agree whether ERISA preempts [or does not preempt the cause of action] ...; in fact, they cannot even agree on how to analyze the issue." Jay Conison, *ERISA and the Language of Preemption*, 72 Wash. U. L.Q. 619, 620 (1994). Against this less than promising history, we try to make clear one corner of the problem. We discern a pattern of law allowing courts to distinguish between the issues arising from ERISA-covered plans, plan principals, and plan administration, and those interests that are outside the perimeters of ERISA's preemptive interest.

## The Parties and Their Claims

{5} Parties John Doe No. 2 (Doe 2), Mary Roe, and John Doe No. 1 are a child and his parents, respectively. Doe 2's father is employed by National Presto, whose employees receive benefits through a self-insured health plan. In this case, National Presto is an employer that provides a group health plan to its employees and, by virtue of its self-insurance, it is also an insurer. National Presto's plan is an ERISA plan. Doe 2 was covered as an insured beneficiary under his father's health plan through National Presto when he required psychiatric treatment on an inpatient basis.

{6} Alliance is a corporation that operates the mental health care facilities where Doe 2 was treated. Alliance claims that Araz is an agent of National Presto and the administrator of the plan. Araz claims that it is no more than a medical precertifier and not a benefits administrator, and that benefits documents make this distinction clear.

{7} The complaint alleges the following facts. In May 1999, Doe 2 was admitted to Alliance Hospital at Santa Teresa for inpatient psychiatric treatment. Subsequently, Araz took over case management of Doe 2's case. Araz, acting as representative or agent of National Presto, represented to Alliance that Doe 2 was indeed covered by National Presto's insurance benefit plan, which is subject to ERISA, and that Alliance would be paid for services rendered. On June 7, 1999, at Araz's request, Alliance Hospital discharged Doe 2, who then was transferred to The Adolescent Pointe, a residential treatment center also operated by Alliance. Over the following months, Alliance and Araz had discussions concerning Doe 2's coverage from the June transfer through December 1999, when Doe 2 was discharged from The Adolescent Pointe by Alliance.

{8} Araz and National Presto contend that residential treatment of the sort provided to Doe 2 was not covered by the plan. They claim that under the plan Doe 2 was covered for only thirty days of inpatient psychiatric treatment, not the residential treatment that was provided after the early part of June 1999, and that no representations were made to Alliance authorizing his treatment or the payment thereof. On October 26, 1999, Araz's consulting psychiatrist informed Alliance that in Araz's consideration, Doe 2 no longer met the criteria for medically necessary psychiatric services. Alliance continued to treat Doe 2 until his discharge in December 1999.

{9} Doe 2's treatment was covered to some extent by National Presto, whose health plan was allegedly administered by Araz. Alliance was not paid for certain amounts of these services that it turns out are not covered under the insurance plan. The parties do not dispute that National Presto insured Alliance's patient to some extent. Alliance received payment for some services that all agree were covered by National Presto's plan. It is suing for payment for services that National Presto has declined to cover.

## Procedural Background

{10} Alliance sued National Presto as the insurer under the plan and Araz as the plan administrator or the authorized agent administering National Presto's plan for promissory estoppel, fraud, and breach of contract based on Araz's promises to pay for Alliance's services.[1] These claims are based on state law. A fourth claim for payment of benefits due Doe 2 under ERISA was filed against National Presto alone. The district court dismissed the first three claims against both Defendants based on ERISA preemption on February 26, 2001. It later dismissed the separate ERISA claim against National Presto by summary judgment on May 23, 2002. Araz was dismissed from the suit on May 28, 2002.

{11} Following an April 2002 hearing on National Presto's motion for summary judgment, National Presto's attorney, having secured the approval of all counsel to the form of judgment, sent the judgment to the district court for filing on May 9, 2002. The district court filed the order on May 23, 2002. Araz had obtained an order dismissing "all claims" against it that was filed on May 28, 2002.

{12} Alliance immediately filed a motion for a new trial as to National Presto. It filed a motion for a new trial as to Araz on June 12, 2002, and then, on June 21, 2002, Alliance filed an amended consolidated motion for a new trial, incorporating the previous two motions, specifically requesting reconsideration of all orders entered previously, and for the

granting of a new trial. Alliance then filed its notice of appeal on June 26, 2002, taking an appeal against both National Presto and Araz.

## DISCUSSION

### I. Timeliness of the Appeal

{13} Araz maintains that Alliance did not file a timely appeal following the dismissal of the state law claims against Araz. National Presto does not contest the timeliness of Alliance's appeal.

{14} As this case proceeded through the district court, all state law claims against National Presto and Araz were dismissed from the suit early on when the district court found ERISA preemption of those claims. Alliance filed a motion to reconsider that dismissal, to which Araz responded. The motion was denied. All this occurred by April 2001. Following this dismissal, no other claim remained naming Araz as a defendant. Only the claim against National Presto under ERISA for plan benefits due Doe 2 remained.

### Araz's Potential Liability as National Presto's Agent Continued Beyond the Dismissal of State Law Claims

{15} The ERISA claim against National Presto remained active until May 23, 2002, when, during the trial of the remaining ERISA claim, the district court entered its order of summary judgment dismissing the claim as to National Presto. Araz followed up with a response to National Presto's motion for summary judgment that argued for dismissal of all counts against both National Presto and, specifically, Araz. Araz's request was granted and filed by the court on May 28, 2002. At the hearing on the motion, Araz acknowledged that while it was "[t]echnically" out of the case in February 2001, because allegations remained concerning the agency or apparent authority of Araz to bind National Presto, it "was still in the case simply because the ERISA allegations against National Presto remained." We believe that Araz's concession in this regard was correct.

---

1. Alliance also sued Doe 2 and his parents, although Alliance's claims against them are not at issue in this appeal.

## The Remaining Question of Agency Kept the Potential Claim Against Araz Alive

{16} The question of an agent's actual or apparent authority to bind its principal is a question of fact which would preclude summary judgment. *See, e.g., Romero v. Mervyn's,* 106 N.M. 389, 390, 744 P.2d 164, 165 (1987) (holding that genuine issue of fact concerning agent's authority to bind principal precludes summary judgment). Alliance's complaint alleged quite clearly that Araz was acting as National Presto's agent and benefits administrator throughout its transactions with Defendants concerning Doe 2's treatment. The allegation that Araz was representing National Presto as its agent, with authority to bind National Presto to providing coverage under its plan to Doe 2, is accepted as true by us for purposes of reviewing the district court's dismissal of the state law counts. *See Padwa v. Hadley,* 1999–NMCA–067, ¶ 8, 127 N.M. 416, 981 P.2d 1234. It is this agency by which Araz continued to recognize its possible liability as long as National Presto's liability to provide coverage was still an active issue. National Presto's liability under ERISA was not determined until May 2002; Araz's possible liability continued as well.

## Even After the February 2001 Dismissal, Araz Continued to Participate in the Case as If It Was a Party

{17} Araz's continuing connection with the case does not rest on its possible liability alone. From February 2001 through the end of the case in June 2002, Araz continued to participate in the case and file pleadings in the district court. Araz responded to discovery, and in December 2001 filed a motion to dismiss for failure to prosecute. This was denied on December 17, 2001. Araz also filed a second motion to dismiss based on Alliance's failure to prosecute on March 27, 2002.

{18} In its motion to dismiss filed on December 13, 2001, Araz sought dismissal of the case against it for failure to prosecute. In that motion, it asserted that it had answered interrogatories, arranged depositions, and had received correspondence alleging failure to answer interrogatories from Alliance—all after the dismissal of the counts against it on February 26, 2001. In that motion, it sought dismissal of all claims against it with prejudice, even though the counts in which Araz itself was named were dismissed on February 26, more than nine months previously. Araz then filed a second certificate of service to Alliance's interrogatories on December 19, 2001, and a scheduling report on December 28, in which it listed its witnesses for trial, stated that its discovery would take another five to six months, and further stated its intention to "[pursue] summary judgment" of the "remaining claims against the corporate defendants."

{19} Clearly, Araz was acting as if it were still a party to the action with a need to defend against Alliance's claims. Araz's continued participation in the case in discovery might well be consistent with a party who had been dismissed from a case but was still a witness. Araz's filing of the second motion to dismiss for failure to prosecute in March 2002, a motion to extend the mediation deadline filed the same day, and in May 2002, another motion to dismiss following National Presto's successful motion for summary judgment, all speak to Araz's understanding that it was not finished with the suit—or more accurately, that the suit was not finished with Araz. Araz further filed a response in support of National Presto's motion for summary judgment attempting to draw the district court's attention to relevant case law supporting ERISA preemption of claims resulting from modification of health care plan terms.

{20} This is not the behavior of a party who has been dismissed from a suit almost a year and a half previously. Araz's pleadings recognize possible continued liability in the case should it be found to have operated as National Presto's agent while dealing with Doe 2. Arguing for dismissal on the merits of the claim indicates to us that Araz considered itself a functioning defendant in the case, even if the counts against it had, as it said, "technically" been dismissed in February 2001.

### The February 26, 2001, Order Was Not a Final Order

{21} Despite its activity and seeking a dismissal of "all claims" against it in December 2001, Araz argues that the order of February 26, 2001, was a final order as to all claims against it, and that Alliance's appeal is therefore not timely. Alliance responds that the February 26, 2001, order dismissing state law claims against Araz based on ERISA preemption was not a final order under Rule 1–054 NMRA. We agree with Alliance, and hold that the dismissal of the case was not final until May 2002 when all claims against Araz and National Presto were finally dismissed.

{22} Furthermore, the order of dismissal entered by the district court in February 2001 was not a final order in the case. It did not resolve all claims in the case against Araz under Rule 1–054. Given the continued participation of Araz, and the trial court's specific finding of jurisdiction over Araz, the issue of Araz's liability as an agent of National Presto was one that could still be litigated up to the point of the dismissal of Count VI claiming benefits of National Presto under ERISA should Araz's agency become an issue. Given the actions of the parties, the policy behind hearing appeals on the merits, and the fact that the final order dismissing Araz filed on May 28, 2002, dismissed all claims and was definitive, we hold that Alliance's appeal was timely.

{23} Last, we emphasize that "[i]t is the policy of this court to construe its rules liberally to the end that causes on appeal may be determined on the merits, where it can be done without impeding or confusing administration or perpetrating injustice." *Trujillo v. Serrano*, 117 N.M. 273, 276, 871 P.2d 369, 372 (1994) (internal quotation marks and citation omitted). Here, Araz's active participation in the case, including seeking "final" dismissals for lack of prosecution and as a result of dismissal of the ERISA claim against National Presto that laid to rest the question of its liability as an agent, all recognize that Alliance's claims still carried potential impact on Araz's rights. Araz's clear acknowledgment of this fact to the district court reinforces our decision in this regard.

### The Appeal Was Timely

{24} The May 28, 2002, order of dismissal by its own terms dismissed "all claims against [Araz]" with prejudice. We hold that order to be the final, appealable order as to claims against Araz. By filing its appeal on June 26, 2002, Alliance timely filed its appeal of the order dismissing Araz as a defendant in this case.

### II. The District Court Erred in Ruling that Alliance's State Law Claims Brought Against Defendants are Preempted by ERISA

### Standard of Review and Background

{25} The district court dismissed Alliance's promissory estoppel, fraud, and breach of contract claims against National Presto and Araz. In doing so, the district court found that these state law claims were "preempted by [ERISA] as such claims affect the benefits and administration of the Plan[.]" "Whether Defendants were entitled to judgment as a matter of law based on federal preemption is a legal question we review de novo." *Largo v. Atchison, Topeka & Santa Fe Ry.*, 2002–NMCA–021, ¶ 5, 131 N.M. 621, 41 P.3d 347. "We interpret the intention of Congress and the meaning of its statutes de novo." *Palmer v. St. Joseph Healthcare P.S.O., Inc.*, 2003–NMCA–118, ¶ 17, 134 N.M. 405, 77 P.3d 560, *cert. granted*, 134 N.M. 374, 77 P.3d 278 (2003), *dismissed*, 2004–NMCERT–010, 136 N.M. 542, 101 P.3d 808. Furthermore, in reviewing a motion to dismiss, "all well-pleaded factual allegations" are accepted as true, and all doubts are resolved "in favor of the sufficiency of the complaint." *Padwa*, 1999–NMCA–067, ¶ 8, 127 N.M. 416, 981 P.2d 1234. The only question is "whether the plaintiff might prevail under any state of facts provable under the claim." *N.M. Life Ins. Guar. Ass'n v. Quinn & Co.*, 111 N.M. 750, 753, 809 P.2d 1278, 1281 (1991); *Valles v. Silverman*, 2004–NMCA–019, ¶ 6, 135 N.M. 91, 84 P.3d 1056.

{26} Alliance argues that it is entitled to reversal of the district court's ruling that

its state law claims are preempted by ERISA. It asserts that false or negligent representations of Doe 2's coverage and promises of payment made by Araz, who was alleged to be National Presto's agent or representative or both, bound National Presto to pay for services Alliance provided. It states that without such promises, Alliance would not have rendered medical services and would not thus have suffered financial injury. Alliance maintains that it relied in good faith upon Defendants' misrepresentations that National Presto would pay for the services provided by Alliance. Alliance further argues that it is entitled to full payment for services from Defendants because it relied on Araz's representations that services were medically necessary as a further guarantee that these services were covered by National Presto's insurance plan.

{27} But for the issue of ERISA preemption, these are recognized claims in New Mexico. *See, e.g., Charter Servs., Inc. v. Principal Mut. Life Ins. Co.,* 117 N.M. 82, 86, 868 P.2d 1307, 1311 (Ct.App.1994) ("Negligent misrepresentation is an action governed by the general principles of the law of negligence." (internal quotation marks and citation omitted)); *Teague–Strebeck Motors, Inc. v. Chrysler Ins. Co.,* 1999–NMCA–109, ¶ 16, 127 N.M. 603, 985 P.2d 1183 (noting in dicta several theories of misrepresentation from which damages may arise, including promissory estoppel), *overruled on other grounds by Sloan v. State Farm Mut. Auto. Ins. Co.,* 2004–NMSC–004, ¶ 6, 135 N.M. 106, 85 P.3d 230.

{28} Alliance asserts these claims under state law, asserting National Presto's and Araz's liability for misrepresenting the extent of Doe 2's coverage, and that National Presto would pay. Defendants assert that to allow such an action to proceed would violate ERISA's federal statutory preemption of actions under state law that relate to and affect benefit plan funds and their administration. Defendants also contend that dismissal of Alliance's claims was proper because Araz is not an agent or representative of National Presto. This contention is outside the scope of our review. There was no ruling on the principal-agent issue as the district court dismissed the state law claims based on ERISA preemption. Although the record reflects that the issue concerning agency and the authority of Araz was discussed during the district court proceedings, facts concerning the relationship between National Presto and Araz were not fully developed, and there was no district court ruling on this factual issue. *See J.A. Silversmith, Inc. v. Marchiondo,* 75 N.M. 290, 293, 404 P.2d 122, 124 (1965) (stating that "matters not raised or brought into issue by the pleadings, and upon which no ruling of the trial court was invoked, are not preserved for review on appeal").

{29} Because we accept the allegations in Alliance's complaint as true, we do not decide whether Araz was other than Alliance described, or if there are factual questions about Araz's agency. Thus, for purposes of this appeal, we assume that Araz made representations to Alliance that Doe 2 was covered by National Presto's plan, and that payment would be forthcoming for services Alliance rendered to Doe 2. We also assume that these representations were made by Araz as an agent of National Presto, and that both parties would be liable if these facts were proven at trial. The question, therefore, is simply whether the fraud, promissory estoppel, and breach of contract claims are preempted by federal law.

**ERISA PREEMPTION**

{30} Although ERISA is federal legislation, Araz urges us to focus on New Mexico state case law for guidance on this preemption issue. It is true that we have some New Mexico cases concerning preemption and its relation to ERISA, and, of course, we take those cases into consideration. However, our case law recognizes that federal cases are more informative on these issues, and we also look to pertinent federal law for guidance. *See Sonntag v. Shaw,* 2001–NMSC–015, ¶ 27, 130 N.M. 238, 22 P.3d 1188 (stating that "[w]ithout binding New Mexico law to interpretations made by the federal courts of the federal statute," we apply the guidelines articulated in the applicable federal law (internal quotation marks and citations omitted)).

■ {31} Under the Supremacy Clause of the United States Constitution, U.S. Constitution article VI, clause 2, federal preemption of state law may be "explicitly mandated by Congress, compelled due to an unavoidable conflict between the state law and the federal law, or compelled because the state law is an obstacle to the full accomplishment of congressional objectives." *In re Timberon Water Co.*, 114 N.M. 154, 158, 836 P.2d 73, 77 (1992) (citation omitted). ERISA's preemption provision, 29 U.S.C. § 1144(a), provides that the provisions of this Act "shall supersede any and all State laws insofar as they may now or hereafter *relate to* any employee benefit plan." (Emphasis added.) Thus, we must decide whether Alliance's state law claims "relate to" National Presto's employer benefit plan because if they do, they are preempted.

■ {32} The United States Supreme Court has interpreted the phrase "relates to" in a broad sense to include laws that have a "connection with or reference to such a plan." *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 100 n. 21, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983); *Lunn v. Time Ins. Co.*, 110 N.M. 73, 74, 792 P.2d 405, 406 (1990); *Sappington v. Covington*, 108 N.M. 155, 156, 768 P.2d 354, 355 (Ct.App.1988). The scope of the ERISA preemption clause is thus "broad, [but] not infinite, and certain claims based on state law that in some sense relate to an ERISA plan are not preempted." *Lunn*, 110 N.M. at 74, 792 P.2d at 406. Preemption is limited in that "[s]ome state actions may affect employee benefit plans in too tenuous, remote, or peripheral a manner to warrant a finding that the law 'relates to' the plan." *Shaw*, 463 U.S. at 100 n. 21, 103 S.Ct. 2890. Furthermore, allowed "lawsuits against ERISA plans for run-of-the-mill state-law claims such as unpaid rent, failure to pay creditors, or even torts committed by an ERISA plan—are relatively commonplace." *Mackey v. Lanier Collection Agency & Serv., Inc.*, 486 U.S. 825, 833, 108 S.Ct. 2182, 100 L.Ed.2d 836 (1988) (holding that statute exempting ERISA plan benefits from state enforcement orders did not preempt collection of money judgments through garnishment).

■ {33} New Mexico has recognized a strong presumption against preemption. *Palmer*, 2003–NMCA–118, ¶¶ 38, 39, 134 N.M. 405, 77 P.3d 560; *Montoya v. Mentor Corp.*, 1996–NMCA–067, ¶ 7, 122 N.M. 2, 919 P.2d 410; *cf. Stoneking v. Bank of Am., N.A.*, 2002–NMCA–042, ¶¶ 9–10, 132 N.M. 79, 43 P.3d 1089 (holding that federal law and its regulations clearly preempted state laws concerning prepayment penalties on home loans). The United States Supreme Court has "long presumed that Congress does not cavalierly pre-empt state-law causes of action." *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485, 116 S.Ct. 2240, 135 L.Ed.2d 700 (1996). There is a presumption against the preemption of state laws in areas of traditional state regulation and those laws that do not intrude on either ERISA's general purpose or its preemption clause purpose. *See, e.g., De Buono v. NYSA–ILA Med. & Clinical Servs. Fund*, 520 U.S. 806, 815, 117 S.Ct. 1747, 138 L.Ed.2d 21 (1997) (suggesting that where existence of a pension plan is not critical to a state law cause of action preemption would not apply); *N.Y. State Conference v. Travelers Ins. Co.*, 514 U.S. 645, 659, 115 S.Ct. 1671, 131 L.Ed.2d 695 (1995) (finding that mandatory state surcharges by hospitals on bills where insurance coverage was provided by ERISA plans were not preempted because they have only an "indirect economic influence" on employee plans); *Cal. Div. of Labor Standards Enforcement v. Dillingham Constr., N.A., Inc.*, 519 U.S. 316, 325, 117 S.Ct. 832, 136 L.Ed.2d 791 (1997) (holding that "[w]here a State's law acts immediately and exclusively upon ERISA plans ... or where the existence of ERISA plans is essential to the law's operation ... that 'reference' will result in pre-emption") (citations omitted) (hereinafter *Dillingham* ).

■ {34} Construing the "relates to" language of the preemption clause is difficult. *Dillingham* refers to the " 'unhelpful text' of ERISA's pre-emption provision." *Id.* at 324, 117 S.Ct. 832; *see also Travelers Ins. Co.*, 514 U.S. at 655–56, 115 S.Ct. 1671 (recognizing the problem of a too expansive reading of "relate to" and looking to Congress's intent in creating the ERISA statute in order to interpret the scope of preemption); Conison, *supra* at 623–29. Because of this difficulty in

interpreting the "relate to" language of 29 U.S.C. § 1144 to determine and measure the extent of the relation for purposes of preemption, we must look "to the objectives of the ERISA statute as a guide to the scope of the state law that Congress understood would survive[,]" as well as to the nature of the effect of the state law on the ERISA plan. *Travelers Ins. Co.*, 514 U.S. at 656, 115 S.Ct. 1671 (acknowledging that the text of the ERISA preemption provision is unhelpful and looking to Congressional intent for guidance in the interpretation and application of that provision); *Dillingham*, 519 U.S. at 325, 117 S.Ct. 832 (looking both to ERISA's objectives and to the nature of the state law's effect on ERISA plans); *Gonzales v. Surgidev Corp.*, 120 N.M. 133, 139, 899 P.2d 576, 582 (1995) ("Thus we must look to the [federal] statute to determine whether it displaces state courts as forums for considering claims involving medical devices.").

{35} ERISA was enacted

> to protect ... the interests of participants in employee benefit plans and their beneficiaries, by requiring the disclosure and reporting to participants and beneficiaries of financial and other information with respect thereto, by establishing standards of conduct, responsibility, and obligation for fiduciaries of employee benefit plans, and by providing for appropriate remedies, sanctions, and ready access to the Federal courts.

29 U.S.C. § 1001(b) (2000). Further, in enacting ERISA, Congress was concerned

> with the mismanagement of funds accumulated to finance employee benefits and the failure to pay employees benefits from accumulated funds.... It established extensive reporting, disclosure, and fiduciary duty requirements to insure against the possibility that the employee's expectation of the benefit would be defeated through poor management by the plan administrator.

*Dillingham*, 519 U.S. at 326–27, 117 S.Ct. 832 (internal quotation marks and citation omitted).

■■■ {36} To this end, the preemption language in 29 U.S.C. § 1144 indicates Congress's intent to establish the regulation of employee welfare benefit plans "as exclusively a federal concern." *Alessi v. Raybestos–Manhattan, Inc.*, 451 U.S. 504, 523, 101 S.Ct. 1895, 68 L.Ed.2d 402 (1981). This preemption section of the ERISA statutory framework shows Congress's intent

> to ensure that plans and plan sponsors would be subject to a uniform body of benefits law; the goal was to minimize the administrative and financial burden of complying with conflicting directives among States or between States and the Federal Government ..., [and to prevent] the potential for conflict in substantive law ... requiring that tailoring of plans and employer conduct to the peculiarities of the law of each jurisdiction.

*Travelers Ins. Co.*, 514 U.S. at 656–57, 115 S.Ct. 1671 (internal quotation marks and citation omitted) (alterations in original). "The basic thrust of the pre-emption clause, then, was to avoid a multiplicity of regulation in order to permit the nationally uniform administration of employee benefit plans." *Id.* at 657, 115 S.Ct. 1671.

■■■ {37} We keep in mind that the purpose of ERISA was to nationally standardize the relationships between participants and beneficiaries in employee benefit plans, and to provide ready access to the federal courts for those who had disputes. Prior to ERISA, the lack of such standardization and proliferation of state laws and regulations had a serious impact upon the insurance industry that in turn had a negative impact upon the consumer. The authority to preempt state actions that relate to an employee benefit plan was broad, but with one singular exception. "Some state actions may affect employee benefit plans in too tenuous, remote, or peripheral a manner to warrant a finding that the law 'relates to' the plan." *Shaw*, 463 U.S. at 100 n. 21, 103 S.Ct. 2890. In the ensuing years of litigation filling in the blanks that *Shaw* left behind, the lower federal courts have been left to sort out its language with mixed results. *See* Jeffrey A. Brauch, *Health Care Providers meet ERISA: Are Provider Claims for Misrepresentation of Coverage Preempted?*, 20 Pepp. L.Rev. 497, 500 (1993).

### Tests for What "Relates to" a Plan

{38} "Relation to" an ERISA plan has been held to exist if the law "has a connection with or reference to such a plan." *Lunn*, 110 N.M. at 74, 792 P.2d at 406 (internal quotation marks and citation omitted). Although *Lunn* recognized a federal intention to interpret preemptive clauses broadly, it recognized that certain claims under state law are not preempted. *Id.* In its answer brief, National Presto characterizes Alliance's claim in Count VI for payments of benefits under ERISA as Doe 2's surrogate as one that "attempted to advance ... an equitable estoppel/detrimental reliance claim, not a claim based upon any actual benefit provided by the Plan." It is precisely this problem—what is *not* a claim "related to" a benefit plan—with which we are concerned here.

{39} We agree with Defendants to the extent that if Alliance were attempting to stand in the shoes of Doe 2 to collect benefits to which the plan entitled him, such causes of action would be preempted by ERISA. It is expressly for this reason that the dismissal of Alliance's claim under ERISA for payment of benefits to which Doe 2 was entitled was properly based on ERISA preemption. Clearly such a claim directly "relates to" the relationship between plan principals (insurer, insured/beneficiary, fiduciaries), seeks a construction of what is available to Doe 2 under terms of the plan by inserting the third-party provider as a surrogate for the beneficiary, and seeks to challenge the internal administration of claim evaluation and benefit payment under the plan itself. These three considerations unequivocally trigger ERISA preemption. It should be noted that this discussion is illustrative only, as Alliance does not contest the dismissal of its claim pursuant to ERISA.

{40} Defendants attempt to characterize Counts I–III in this case as ones that are preempted by ERISA because Alliance seeks to collect benefits as little more than a proxy of Doe 2's rights as a plan beneficiary. Looking at it through the lens suggested above, National Presto's argument that the ERISA action is not "a claim based upon any actual benefit provided by the Plan" will ultimately be dispositive of the issues concerning state law claims.

{41} In the federal circuits, a minority and majority view has developed of preemption where, as here, a provider is basing its action on state causes of action amounting to claims arising from misrepresentation of the existence or extent of benefits by a plan or its agents. Defendants rely on *Cromwell v. Equicor–Equitable HCA Corp.*, 944 F.2d 1272 (6th Cir.1991), which represents the minority view. In *Cromwell*, a provider of home health care had called the administrator of the plan, allegedly receiving verification of coverage for such services. *Id.* at 1274–75. The provider paid for a time, but then the administrator learned that the plan did not actually cover the services and stopped paying claims, though it did not notify the provider until some two and a half months later that it would no longer pay. *Id.* at 1275. The provider sued in state court alleging breach of contract, promissory estoppel, negligence, and breach of the duty of good faith. *Id.* The administrator removed the case to federal court, where it was dismissed as preempted by ERISA. *Id.* The Sixth Circuit affirmed, rejecting the "tenuous or peripheral effect" argument of the provider, holding instead that the goal of the action was no more than to seek the recovery of an ERISA plan benefit due its patient. *Id.* at 1275–76. The court further held that to allow such recovery would affect the relationship between plan principals by allowing recovery of what essentially would be a plan benefit. *Id.* at 1276. This position has been called "extreme." Scott C. Walton, *ERISA Preemption of Third–Party Provider Claims: A Coherent Misrepresentation of Coverage Exception*, 88 Iowa L.Rev. 969, 983 (2003). The dissent in *Cromwell*, however, looked to the Fifth Circuit's *Memorial Hospital System v. Northbrook Life Insurance Co.*, 904 F.2d 236 (5th Cir.1990) (hereinafter *Memorial Hospital* ), and would hold that provider misrepresentation actions do not involve a claim under the plan, but rather a claim brought because there is no coverage under the plan, which does not affect the relations among the ERISA plan principals. *Cromwell*, 944 F.2d at 1283–84.

{42} Viewing the goal of the action and whether litigation affects the relationships between plan principals are but two of at least six tests that are used by the courts to resolve questions involving the possible ERISA preemption of provider claims for damages against plans for what is essentially misrepresentation by plans or their agents concerning benefit availability or promises to pay to the provider upon which the provider relies. In general, these factors are (1) the goal of the action; (2) the administrative effect of an application of state law; (3) economic impact on the plan; (4) the role of the plan document in the litigation; (5) the effect of applying state law on the relationship between the principal ERISA entities, namely the employer, plan, fiduciary, and beneficiary; and (6) the existence of a remedy to the plaintiff. Brauch, *supra*, at 501–11.

{43} Not all factors apply to all cases. We find the four questions set forth in Walton to be a sensible operational blend of these factors when looking at this issue.

The first question in this paradigm asks whether the provider is suing derivatively or upon a significant independent relationship breached by the plan or its administrators. The second inquiry examines whether finding no preemption would substantially negate an express plan provision. Third, the court should consider whether the economic impact of the claim upon the plan is so substantial and direct as to require preemption. Finally, the analysis inquires whether allowing preemption substantially alters the relationships between the participants, the beneficiaries, the employer, the plan's fiduciaries, and the plan itself.

Walton, *supra*, at 988–89.

{44} It is the Fifth Circuit's decision in *Memorial Hospital* that forms the basis for the majority view that claims such as Alliance's are not preempted, and which we follow in this case. 904 F.2d 236. *Memorial Hospital* further distilled the application of preemption to two situations where: "(1) the state law claims address areas of exclusive federal concern, such as the right to receive benefits under the terms of an ERISA plan; and (2) the claims directly affect the relationship among the traditional ERISA entities— the employer, the plan and its fiduciaries, and the participants and beneficiaries." *Id.* at 245. The Fifth Circuit concluded that a suit for misrepresentation of the existence of coverage by a provider fit neither category where the provider was asserting its state law claim as an independent, third-party provider of medical services. *Cypress Fairbanks Med. Ctr. Inc. v. Pan–Am. Life Ins. Co.*, 110 F.3d 280, 283 (5th Cir.1997).

{45} The effect of applying state law to plans and their administrators and the effect that application might have on the interests ERISA seeks to protect by preemption— plan terms, plan administration, and the relationships between ERISA-covered principals—determines the extent to which such claims may trigger preemption. Although Defendants attempt to distinguish the federal cases which have held that under certain circumstances state law claims are not preempted, we are unpersuaded by these arguments. We follow the reasoning used in the federal court cases which have considered this issue in similar situations, allowing third parties to bring state law claims. *See, e.g., In Home Health, Inc. v. Prudential Ins. Co.*, 101 F.3d 600, 602 (8th Cir.1996) (reversing the district court's finding that a provider's "claim for negligent misrepresentation based on state law was preempted by ERISA"); *The Meadows v. Employers Health Ins.*, 47 F.3d 1006, 1007 (9th Cir.1995) (affirming the district court's finding that ERISA did not preempt the provider's claims for "negligent misrepresentation, estoppel, and breach of contract arising out of an inquiry concerning coverage"); *Airparts Co. v. Custom Benefit Servs.*, 28 F.3d 1062, 1063 (10th Cir.1994) (reversing the district court's finding of ERISA preemption because it found that the claims did not "relate to an ERISA plan"); *Lordmann Enters., Inc. v. Equicor, Inc.*, 32 F.3d 1529, 1530, 1532–33 (11th Cir.1994) (holding that ERISA did not preempt a provider's negligent misrepresentation claim); *Hospice of Metro Denver, Inc. v. Group Health Ins.*, 944 F.2d 752, 756 (10th Cir.1991) (per curiam) (holding that a provider's state common law claim for promissory estoppel was not preempted by ERISA).

[C]ourts are more likely to find that a state law relates to a benefit plan if it affects relations among the principal ERISA entities—the employer, the plan, the plan fiduciaries, and the beneficiaries—than if it affects relations between one of these entities and an outside party, or between two outside parties with only an incidental effect on the plan.

*Memorial Hospital,* 904 F.2d at 249 (internal quotation marks and citation omitted). The Tenth Circuit has recognized four categories of laws which have been preempted. *Airparts Co.,* 28 F.3d at 1064–65. These categories include

laws that regulate the type of benefits or terms of ERISA plans. Second, laws that create reporting, disclosure, funding, or vesting requirements for ERISA plans. Third, laws that provide rules for the calculation of the amount of benefits to be paid under ERISA plans. Fourth, laws and common-law rules that provide remedies for misconduct growing out of the administration of the ERISA plan.

*Id.* (internal quotation marks and citation omitted). Clearly, these relate directly to the internal workings and relationships of plan principals and participants. This case does not fall within these problem areas.

### Alliance's Claims Are Not Derivative of Doe 2's Entitlement to Benefits

{46} Alliance contends that the law established by the Tenth Circuit has "firmly established that state law claims brought by a third party health care provider against the plan sponsor, plan administrator, and/or claims administrator of an ERISA governed group health employee benefit plan are not preempted by ERISA." Alliance argues that it does not seek to claim any rights under the plan, nor does it contend that its state law causes of action seek to enforce or modify the terms of the plan. Rather, Alliance contends it seeks "damages for an independent cause of action separate and apart from the plan."

{47} Here, Alliance seeks recovery for treatment rendered to Doe 2 that was promised but did not exist under the plan. As mentioned above, in commercial circumstances where federal law does not involve itself, misrepresentation as to insurance coverage or that benefits of a policy will be paid are legitimate claims for damages in New Mexico. In contrast, Alliance's claim in Count VI of its complaint specifically sounds under ERISA to compel National Presto to pay benefits owed Doe 2 under the terms of the benefit plan. By asserting Doe 2's rights under the National Presto plan, Alliance seeks by its claim to stand in the shoes of Doe 2 to assert contractual rights under the benefit plan, something clearly preempted by ERISA.

{48} Alliance avers that its state law claims "do not relate to the plan but to representations of coverage made to a third party, that is not a participant or beneficiary of the plan, and [that] do not implicate the administration of the plan." Alliance points out that none of Defendants' alleged conduct relates to the processing of claims or the administration of the plan, or impinges upon the rights or responsibilities of plan principals—simply, the cause of action sounds in Defendants' misrepresentation to Alliance that its services were covered and would be paid for.

{49} Defendants argue that Alliance's claims clearly affect and relate to the structure, administration, and type of benefits provided by National Presto's ERISA health care plan and are preempted by ERISA, as Alliance's claims "equated to a demand for reimbursement from the Plan." They assert that the language of the plan regarding the terms of treatment services as a covered benefit is clear, maintaining that payment has been made to Alliance as an assignee in the maximum amount owed to it under the terms of the plan.

### Alliance's Suit Does Not Affect Any Plan Provision

{50} The conceptual line between Alliance seeking benefits that exceed Doe 2's coverage under the plan and seeking damages for misrepresentation of an ability and inclination to pay for Doe 2's treatment seems thin at first blush. However, National Presto's own argument is that Alliance seeks to recover where there was no coverage for Doe 2 at all, and that argument begins to demon-

strate that Alliance's state law claims are separate. The nature of the commercial transaction itself, as explained in *Memorial Hospital,* shows how the two are quite distinct. 904 F.2d 236. "[O]ne of the first steps in accepting a patient for treatment is to determine a financial source for the cost of care to be provided." *Id.* at 246. "[W]hen an insurance company [or its agent] erroneously informs a health care provider . . . that a patient is covered by health insurance, state law, which allocat[es] . . . risks between commercial entities that conduct business in a state, normally provides a remedy." *Cypress Fairbanks Med. Ctr. Inc.,* 110 F.3d at 283 (internal quotation marks and citation omitted). The state law claim does not arise due to the patient's coverage, but "precisely because there is no ERISA plan coverage." *Memorial Hospital,* 904 F.2d at 246. Allowing a state law cause of action in this case where there is no relation to the terms or conditions of the plan that covered Doe 2, or affects its administration only tangentially by encouraging plans to check their facts before confirming coverage and guaranteeing payment, thus does not transgress any area ERISA seeks to protect.

{51} Alliance's state law claims do not seek to enforce or modify any rights under National Presto's plan, do not allege that any of the plan terms have been breached, and do not relate to the administration of the plan. *See Airparts Co.,* 28 F.3d at 1065 ("The state laws involved do not regulate the type of benefits or terms of the plan; they do not create reporting, disclosure, funding, or vesting requirements for the plan; they do not affect the calculation of benefits; and they are not common law rules designed to rectify faulty plan administration."). By allowing this suit to go forward, there is no threat to the structural integrity or the purpose of the ERISA statutory framework. *See id.* The terms of the plan are immaterial to Alliance's state law claims. "It does not matter what the plan provided in the way of coverage for the patient. The only relevant questions, whether of fact or law, are whether the defendant . . . made a promise that the law will enforce[.]" *Suburban Hosp., Inc. v. Sampson,* 807 F.Supp. 31, 33 (D.Md.1992). Although Alliance's damages would be mea-

sured in part by the amount of benefits it would have received had there been no misrepresentation regarding coverage, this is incidental in relation to the plan. *See Memorial Hospital,* 904 F.2d at 247. In *Memorial Hospital,* the court discussed the preemption question in relation to an ERISA plan's refusal to pay hospital expenses after the plan had orally represented that there was coverage. The court stated:

> If a patient is not covered under an insurance policy, despite the insurance company's assurances to the contrary, a provider's subsequent civil recovery against the insurer in no way expands the rights of the patient to receive benefits under the terms of the health care plan. If the patient is not covered under the plan, he or she is individually obligated to pay for the medical services received. The only question is whether the risk of nonpayment should remain with the provider or be shifted to the insurance company, which through its agents misrepresented to the provider the patient's coverage under the plan. A provider's state law action under these circumstances would not arise due to the patient's coverage under an ERISA plan, but precisely because there is no ERISA plan coverage.

*Id.* at 246.

### The State Law Claims Do Not Affect the Relationship Between Plan Principals, or the Administration of the Plan

{52} The argument that ERISA preemption is triggered in this case because the state law claims affect the primary administrative function of the benefit plan in that the plan beneficiary's benefit and the amount of that benefit are at issue does not ring true. National Presto argues that the "most important factor under the circumstances of the instant case would appear to be [Alliance's] state law claims' effects on the relations between the alleged principal ERISA entities." This argument arises out of the contention that Araz is National Presto's agent and/or representative and the claim would require an examination of the relations between two ERISA entities. In fact, Araz "denies that its certification that treatment was medically

necessary was a guarantee and/or representation that services were covered and payment would be forthcoming." It also denies an agency relationship with National Presto or that Araz is the plan administrator. Araz contends that it simply contracted with National Presto to perform "utilization review and utilization management for [National] Presto's insureds," i.e., only "to certify whether a proposed treatment was medically necessary." Araz also denies that it was retained by National Presto to verify coverage. The true relationship between Araz and National Presto as plan administrator, agent, or merely reviewer of medical necessity for final coverage decisions by National Presto is one to be established at trial or through other proceedings. The nature of representations and Alliance's reliance on them to its detriment establish the cause of action for misrepresentation.

{53} Alliance has not alleged any conduct on the part of Araz which relates to the administration of the plan, to the processing of Doe 2's claims, or which impinges on or modifies an employee's or beneficiary's rights under the plan. *See Clark v. Coats & Clark, Inc.*, 865 F.2d 1237, 1243–44 (11th Cir.1989) (holding that tort claims had no effect on the administration of an ERISA plan and were therefore not preempted); *Ethridge v. Harbor House Rest.*, 861 F.2d 1389, 1404 (9th Cir.1988) ("ERISA preempts only those state law claims that arise out of the administration of a covered plan."); *cf. Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 48, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987) (holding that ERISA preempts a state law claim brought by a plan participant or beneficiary alleging improper processing of a claim for plan benefits) *superceded by statute on other grounds as stated in Hunter v. Ameritech*, 779 F.Supp. 419, 421 (N.D.Ill.1991); *Ramirez v. Inter–Cont'l Hotels*, 890 F.2d 760, 762, 764 (5th Cir.1989) (same). Here, Alliance is not a plan participant or beneficiary and sues for damages for a breach of promised representations of coverage to pay for services, irrespective of plan benefits. Coverage and payment in this case are questions of fact and exist outside the relationship between Doe 2 and his insurer and its agent. Allowing Alliance's suit to go forward does not impact or

alter the relationship between Araz and National Presto; its success stands or falls based on the nature of the relationship only as to who bears responsibility for a misrepresentation on which Alliance relied to its detriment. Alliance is not seeking benefits due Doe 2 under the plan, but damages for having provided treatment based on misrepresentations that payment would be forthcoming. The relationship of the beneficiary to the plan and its agents is not an issue, nor are the terms of the plan itself germane to Alliance's claims here.

{54} Defendants argue that *Lunn* is dispositive on the preemption issue because that is a New Mexico Supreme Court case which held that state law claims directly relating to an ERISA plan are preempted. *Lunn*, 110 N.M. at 75, 792 P.2d at 407. However, in that case the breach of the insurance contract claim sought benefits under the plan, and the bad faith and misrepresentation claims directly related to the administration of the plan. *Id.* (stating that "the suit was for benefits under the plan and damages for alleged bad faith in its administration"). We determine that other cases more directly answer the ERISA preemption issue presented and follow their analysis. *See, e.g., Hospice of Metro Denver, Inc.*, 944 F.2d at 756 (allowing state law claims by providers where such claims do not involve a relationship among "the principal ERISA entities" and to hold such claims preempted by ERISA "would stretch the 'connected with or related to' standard too far").

### Without the State Law Claims, Alliance Is Left Without a Remedy

{55} Alliance further argues that if its state law claims are preempted, it will have no recourse because as a third party, it has no standing to bring a claim under the plan. It points out that because the ERISA framework only permits a participant in or beneficiary of an employee welfare benefit plan to maintain a civil action to recover benefits due under the terms of the plan. *See* 29 U.S.C. § 1132(a)(1)(B).

{56} Here, if its state law claims are preempted, Alliance has no recourse, as it

concedes that its ERISA claim under the plan in Count VI of its complaint against National Presto was properly dismissed. *See Lunn*, 110 N.M. at 75, 792 P.2d at 407. It is true that "preemption normally is not dependent upon the availability of ERISA remedies." *Hospice of Metro Denver, Inc.*, 944 F.2d at 755. The United States Supreme Court has stated that "[t]he policy choices reflected in the inclusion of certain remedies and the exclusion of others under the federal scheme would be completely undermined if *ERISA-plan participants and beneficiaries* were free to obtain remedies under state law that Congress rejected in ERISA." *Pilot Life Ins. Co.*, 481 U.S. at 54, 107 S.Ct. 1549 (emphasis added). However, in this case, Alliance is not a participant or a beneficiary and therefore lacks alternative remedies in the event of preemption. *Hospice of Metro Denver, Inc.*, 944 F.2d at 755 (noting that where the plaintiff is neither a participant nor beneficiary, "its lack of alternative remedies in the event of preemption is deserving of consideration"); 29 U.S.C. § 1132(a)(1)(B) (stating ERISA's civil enforcement scheme).

**Alliance's State Law Claims Are Not Preempted**

{57} Although there is no simple test for determining when a state law relates to an ERISA plan, we conclude that the state law claims at issue do not fall within any of the categories listed above and have no direct connection with National Presto's ERISA-governed plan. Alliance's state law claims do not seek to enforce or modify any rights under National Presto's plan, do not allege that any of the plan terms have been breached, and do not relate to the administration of the plan. *See Airparts Co.*, 28 F.3d at 1065 ("The state laws involved do not regulate the type of benefits or terms of the plan; they do not create reporting, disclosure, funding, or vesting requirements for the plan; they do not affect the calculation of benefits; and they are not common law rules designed to rectify faulty plan administration."). By allowing this suit to go forward, there is no threat to the structural integrity or the purpose of the ERISA statutory framework. *See id.* at 1066. The terms of the plan are immaterial to Alliance's state law claims.

What matters is "whether the defendant … made a promise that the law will enforce." *Suburban Hosp., Inc.*, 807 F.Supp. at 33.

{58} Although Alliance's damages would be measured in part by the amount of benefits it would have received had there been no misrepresentation regarding coverage, this is incidental in relation to the plan. *See Memorial Hospital*, 904 F.2d at 247. Further, we acknowledge that breach of contract claims have been held to be preempted. *See, e.g., id.* at 245; *Lunn*, 110 N.M. at 75, 792 P.2d at 407. However, in this case Alliance's breach of contract claim does not refer to the assignment of benefits or attempt to enforce the plan, and thus we see no direct connection or relation between this claim and the plan. The alleged contract at issue is not based on the terms of the insurance policy, but rather, it is based upon the alleged communications between representatives of National Presto, Araz, and Alliance. Furthermore, the promissory estoppel or fraud counts do not arise from the actual contractual terms of National Presto's plan. Finally, the court in *Memorial Hospital* stressed the consideration of commercial realities in making its preemption determination, recognizing that if the third-party health care providers had no recourse under either ERISA or state law, health care providers would be reluctant to provide healthcare without prepayment. 904 F.2d at 247. In this case, the state claims may proceed because issues of material fact exist whether a contract was formed between Alliance and Defendants and whether representations were made by Defendants to Alliance regarding the coverage and obligation to pay for Alliance's health services.

{59} Araz further argues that even if Alliance's promissory estoppel claim is not preempted, summary judgment was appropriate on that claim because Alliance failed to establish that Defendants acted with the requisite scienter necessary to bring an estoppel claim in New Mexico. *See Capo v. Century Life Ins. Co.*, 94 N.M. 373, 377, 610 P.2d 1202, 1206 (1980); *Gonzales v. Pub. Employees Ret. Bd.*, 114 N.M. 420, 427, 839 P.2d 630, 637 (Ct.App.1992). However, the matter was before the trial court on a motion to dismiss, not a summary judgment. The complaint

alleges facts concerning the representations of Defendants, and if Alliance can prove the elements of the estoppel claim, then its suit on this claim should proceed. Again, absent a motion for summary judgment, the facts surrounding the claims must be determined by the finder of fact.

### Mootness and Standing

■ {60} Having held that Alliance asserts its claim for injury without regard to the relationship of Araz to Doe 2, we determine that a factual basis exists for Alliance to allege damages based on its reliance on Araz's representations of coverage and payment due. Alliance has standing to assert a claim for damages. As we find above, Alliance is not asserting its entitlement to payment because of Doe 2's relationship to the plan, or because the plan is alleged to provide benefits that would pay Alliance for its treatment of him. Alliance asserts entitlement to payment because of independent promises made to it by Defendants. Because the state causes of action brought by Alliance all allege its own pecuniary injury as a result of Defendants' misrepresentation of coverage and the promise of payment, it is the real party in interest entitled to bring suit in its name.

■ {61} The fact that judgment for some of the hospital bill has been rendered against Doe 2's parents as responsible parties, or that Medicaid has paid some of the claim, does not render Alliance's claim moot. Again, the facts that Alliance was paid for some services that all agree were covered or that someone else paid or is responsible for paying other portions is not the issue in this suit—the issue is the responsibility of Defendants for making good on their promises, if any exist, to pay for care that was not covered under the plan. *Hamman v. Clayton Mun. Sch. Dist. No. 1*, 74 N.M. 428, 429, 394 P.2d 273, 274 (1964) (stating that "[a] case is moot when it does not involve any actual controversy [or][w]here the issues involved in the trial court no longer exist" (internal quotation marks and citation omitted)). Thus, we reverse the district court and allow Alliance to go forward to prove its claims for monetary damages against Araz and National Presto. The issue of Defendants' responsibility to Alliance is hotly contested, and will be the continued subject of much heated debate, but the claims are certainly not moot.

### CONCLUSION

{62} Based on the foregoing, we reverse the district court's dismissal of Alliance's state law claims against Araz and National Presto. We remand the case to the district court for further proceedings.

{63} **IT IS SO ORDERED.**

WE CONCUR: LYNN PICKARD and IRA ROBINSON, Judges.