The STATE of Ohio, Appellee,

v.

WALLACE, Appellant.

[Cite as State v. Wallace, 160 Ohio App.3d 528, 2005-Ohio-1746.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 84808.

Decided April 14, 2005.

William D. Mason, Cuyahoga County Prosecuting Attorney, and Brian S. Deckert, Assistant Prosecuting Attorney, for appellee.

Paul Mancino Jr., for appellant.

SEAN C. GALLAGHER, Judge.

{¶ 1} Appellant, Linda Wallace, appeals from her conviction in the Cuyahoga County Court of Common Pleas for theft in violation of R.C. 2913.02. For the reasons stated below, we affirm.

{¶ 2} Wallace was indicted on October 16, 2003, for committing a theft against the Social Security Administration. Wallace entered a plea of not guilty, and the matter proceeded to a bench trial.

{¶ 3} At trial, Sharon Denise Steward, an adoption social worker for Cuyahoga County Children and Family Services ("CFS") testified that Wallace's son, Franklin Milgrim Jr., was placed in the temporary custody of CFS on February 19, 1993. Franklin's grandmother was given legal custody of him on April 9, 1993. From 1993 until June 2000, Franklin was placed in various locations, including Health Hill Hospital, Beachbrook Foster Homes, his grandmother's home, a detention home, and Cleveland Christian Home. In June 2000, Franklin went to live with his aunt and uncle, who adopted him. The adoption was finalized on June 11, 2002, when Franklin was 16 years old.

{¶ 4} Kenneth L. Pepera, a management support specialist for the Social Security Administration, testified that an application for Social Security benefits was filed in 1990 by Wallace for her son Franklin. Franklin was entitled to receive Social Security benefits because he was a minor and his father had retired. Wallace was listed as the payee for Franklin on each of the checks. The money was for Franklin and was to be used for his "current needs," such as housing, food, clothing, and medicine.

{¶ 5} The Social Security application provides that the payee is to "promptly notify the Social Security Administration" if the payee no longer has responsibility for the care and welfare of the child or if the child leaves the payee's care or custody or changes address. However, Wallace never complied with these reporting requirements.

{¶ 6} Wallace filed another application in August 1993 for receiving her own Social Security benefits. On this application she indicated that her son resided with her even though he had been removed from her custody. Wallace continued to receive the benefit checks for Franklin until April 2002, at which time Franklin's adoptive uncle became the payee. The total amount of benefits Wallace received for Franklin from April 1993 until April 2002 was $64,111. Pepera testified that the Social Security Administration still intended to pay the money to Franklin.

{¶ 7} Nancy Kennedy, a special agent with the Social Security Administration, testified that she had interviewed Wallace in May 2002. Agent Kennedy stated that Wallace initially claimed that her son was still living with her. After Agent Kennedy confronted Wallace with CFS records, Wallace admitted that Franklin had not been in her custody since 1993. Wallace also told Agent Kennedy that she had used Franklin's Social Security benefits to pay for her rent and her needs. Wallace admitted that she was aware the benefits were to be used for her son and that she did use the money for her son on a few occasions, such as giving him a birthday cake or leaving money in an envelope for him. However, the vast majority of the money was not used for her son. Wallace blamed the CFS because she had to live separate from her son.

{¶ 8} Franklin's grandmother, Shirley Wallace, testified that during the time Franklin resided with her, she and her mother paid for all of Franklin's expenses. Shirley Wallace stated that they did not receive any money from Wallace. They also attempted to get Wallace to relinquish the Social Security benefits and told her she could end up in trouble, but Wallace would not do so because she claimed that she needed the money.

{¶ 9} Franklin's uncle testified that during the time Franklin resided with him, he never received any of the Social Security benefits sent to Wallace for Franklin's needs. However, he stated that Wallace would leave little things

outside the door, such as pies or cakes, and occasionally a little gift or piece of clothing. He indicated that he would be stretching it to say she gave $20 to $25 per month from June 2000 to April 2002.

{¶ 10} Wallace testified that she lost custody of her son in 1993, but continued to receive Franklin's Social Security checks every month until April 2002. Wallace claimed that she was spending all of the money on Franklin for food, clothing, and living expenses. She further claimed that she paid rent to her mother when she lived with her mother and when Franklin was living with her mother. However, Wallace admitted that she used the Social Security money to pay for her apartment.

{¶ 11} Following the above testimony, the court amended the indictment to include Franklin Milgrim Jr. as an additional or alternative victim. The court found Wallace guilty of theft. The court sentenced Wallace to time served and ordered her to make restitution to the Social Security Administration in the amount of $60,905.45.

{¶ 12} Wallace has appealed the trial court's decision, raising eight assignments of error for our review.

{¶ 13} Wallace's first assignment of error provides:

{¶ 14} "1. Defendant was denied due process of law when she was convicted of an offense that had been fully preempted by federal law."

{¶ 15} Wallace argues that the Social Security system is governed by federal laws and that any prosecution under state law is preempted. Specifically, Wallace refers to Section 1383, Title 42, U.S.Code, which governs the procedure for the payment of benefits and imposes liability on a representative payee for the misuse of funds. The state claims that although federal courts have exclusive jurisdiction over all offenses against the laws of the United States, the theft offense here was prosecuted as a violation of state law.

{¶ 16} In *Darby v. A–Best Prods. Co.*, 102 Ohio St.3d 410, 2004-Ohio-3720, 811 N.E.2d 1117, ¶ 27, the Supreme Court of Ohio restated the controlling principles of the federal preemption doctrine, stating:

> [W]e reiterate the controlling principles that govern this case: (1) the critical question is whether Congress intended state law to be superseded by federal law—the historic police powers of the states are not to be superseded by federal law unless that is the clear and manifest purpose of Congress, (2) a presumption exists against preemption of state police-power regulations, and (3) federal law preempts state law where Congress has occupied the entire field, i.e., where a federal scheme of regulation is " 'sufficiently comprehensive to make reasonable the inference that Congress "left no room" for' " a claim under state law. Id. [*Minton v. Honda of Am. Mfg., Inc.* (1997), 80 Ohio St.3d

62] at 69–70 and 76, 684 N.E.2d 648, quoting *California Fed. S. & L. Assn. v. Guerra* (1987), 479 U.S. 272, 281, 107 S.Ct. 683, 93 L.Ed.2d 613.

{¶ 17} Several courts have rejected arguments similar to those made by Wallace herein. In *Faith v. Caldwell* (Tenn.App.1996), 944 S.W.2d 607, the court found that the state court had jurisdiction in an action for misappropriation of Social Security benefits. The court recognized that the Social Security Act provides that "a court of competent jurisdiction" may determine that a representative payee has misused an individual's benefit and that the federal statutes and regulations contain no language indicating an intent to preempt state court jurisdiction. Id. at 610–611; see, also, *Catlett v. Miller* (1988), 55 Ohio App.3d 1, 561 N.E.2d 948 (finding state court jurisdiction over action alleging misappropriation of Social Security benefits).

{¶ 18} In *Commonwealth v. Morris* (1990), 394 Pa.Super. 185, 575 A.2d 582, the court found that state theft statutes were not preempted by the Social Security Act. In that case, the representative payee used, for her own use, checks that were intended for the maintenance of her son. Id. at 186–187, 575 A.2d 582. The court found that "[u]nder our federalism, the states have the principal responsibility for * * * prosecuting crimes. Therefore, the penalty provision of the Social Security Act at issue here is subject to a presumption that Congress did not intend by its passage to preempt a state's enforcement of its criminal law." (Citation omitted.) Id. at 188, 575 A.2d 582.

{¶ 19} The *Commonwealth* court recognized that the United States Supreme Court does not consider the mere fact that Congress has enacted a comprehensive legislative scheme to be sufficient to establish an intent to preempt state law. Id., citing *Hillsborough Cty. v. Automated Med. Laboratories, Inc.* (1985), 471 U.S. 707, 717, 105 S.Ct. 2371, 85 L.Ed.2d 714. The court also referred to the fact that Congress made it clear in a committee report involving a penalty provision for Medicare and Medicaid that the provisions were in addition to and not in lieu of any penalty provisions under state and federal law and that it intended the provisions "to have the same effect as the existing penalty provisions under the Social Security Act." *Commonwealth*, 394 Pa.Super. at 190, 575 A.2d 582, citing H.R.Rep. No. 92–231, 92nd Cong., 2d Sess., reprinted in 1972 U.S.Code Cong. & Admin. News 4989, 5094. The court also recognized that the legislative history demonstrates that Congress intended state involvement in the Social Security Act. Id. at 191, 575 A.2d 582. Finally, the court concluded that Congress did not intend to preclude state prosecutions for behavior under state criminal statutes constituting theft of Social Security benefits. Id. at 192, 575 A.2d 582.

{¶ 20} We agree with the above authority and find that the prosecution of Wallace under an Ohio theft statute was not preempted by federal law. Wallace's first assignment of error is overruled.

{¶ 21} Wallace's second assignment of error provides:

{¶ 22} "2. Defendant was denied due process of law when she was convicted of theft from the Social Security Administration as the Social Security Administration cannot be the subject of a state theft offense."

{¶ 23} A similar argument was rejected in *State v. Shaw* (Aug. 8, 1995), Franklin App. No. 94APA12-1778, 1995 WL 480676, wherein the court considered that the money taken was received from the state and found that to hold that the state could not be considered an "owner" would preclude any instance of theft in which the state was the owner of the property taken. The court indicated that "[s]uch an absurd conclusion could not possibly have been contemplated by the legislature in enacting the general theft statute." Id.

{¶ 24} Furthermore, with regard to theft and fraud offenses, the definition of "owner" under R.C. 2913.01(D) applies "unless the context requires a different meaning." We find that in the context of the theft statute, an owner would necessarily include a government agency whose funds have been misappropriated.

{¶ 25} Wallace's second assignment of error is overruled.

{¶ 26} Wallace's third assignment of error provides:

{¶ 27} "3. Defendant was denied due process of law when she was convicted of offenses for which the statute of limitations had expired."

{¶ 28} Wallace argues that the indictment alleged an offense commencing March 1, 1993, and that the six-year statute of limitations under R.C. 2901.13 had expired. Wallace overlooks the fact that she engaged in a continuous course of conduct that did not end until April 2002, when she stopped receiving the Social Security benefits for her son.

{¶ 29} It is well recognized that the statute of limitations on crimes normally begins to run when the crime is complete. *State v. Climaco* (1999), 85 Ohio St.3d 582, 586, 709 N.E.2d 1192; *Toussie v. United States* (1970), 397 U.S. 112, 115, 90 S.Ct. 858, 25 L.Ed.2d 156. Further, R.C. 2901.13(D) states that "[a]n offense is committed when every element of the offense occurs. In the case of an offense of which an element is a continuing course of conduct, the period of limitation does not begin to run until such course of conduct or the accused's accountability for it terminates, whichever occurs first." In this case, the record supports a finding that Wallace engaged in a continuous course of deception by reporting that her son was still residing with her. Wallace also continued to deprive her son of his benefit distributions and take the money for her own use until April 2002. Accordingly, we find that the statute of limitations did not commence until the theft ended in April 2002.

{¶ 30} Wallace's third assignment of error is overruled.

{¶ 31} Wallace's fourth and fifth assignments of error provide:

■ {¶ 32} "4. Defendant was denied due process of law when she was convicted of a criminal offense as a representative payee for Franklin Milgrim."

{¶ 33} "5. Defendant was denied due process of law when she was convicted of theft."

{¶ 34} Wallace appears to argue that because she received the money as a representative payee she could not be charged with theft. Wallace argues that the Social Security Act specifically authorizes payment to a representative payee and provides for restitution in the event of misuse of funds.

{¶ 35} We have already found that the state could prosecute Wallace under the theft statute. The provisions of the Social Security Act pertaining to misuse of funds are not relevant to determining whether sufficient evidence was presented to convict Wallace of theft under state law.

{¶ 36} Wallace, nonetheless, claims that there was insufficient evidence to convict her of theft and that the state failed to prove its case beyond a reasonable doubt. Wallace focuses her argument on the deception element of the crime.

{¶ 37} When an appellate court reviews a record upon a sufficiency challenge, " '[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.' " *State v. Leonard,* 104 Ohio St.3d 54, 2004-Ohio-6235, 818 N.E.2d 229, ¶ 77, quoting *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus.

{¶ 38} The theft statute, R.C. 2913.02, provides:

{¶ 39} "(A) No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services in any of the following ways:

{¶ 40} " * * *

{¶ 41} "(3) By deception."

{¶ 42} R.C. 2913.01(A) defines "deception" as "knowingly deceiving another or causing another to be deceived by any false or misleading representation, by withholding information, by preventing another from acquiring information, or by any other conduct, act, or omission that creates, confirms, or perpetuates a false impression in another * * *."

{¶ 43} In this case, evidence was presented that Wallace continued to report to the Social Security Administration that her son was still living with her. She did so despite the fact that, as a representative payee, she was required under the

reporting responsibilities to promptly notify the Social Security Administration if she no longer had responsibility for the care of her son or if her son was no longer in her care or custody. Evidence was also presented that Wallace continued to receive benefits for her son even though he was no longer in her care or custody and that she used the money for her own use. Viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt, including the element of deception.

{¶ 44} Wallace's fourth and fifth assignments of error are overruled.

{¶ 45} Wallace's sixth assignment of error provides:

{¶ 46} "6. Defendant was denied due process of law when the court entered a judgment entry finding defendant guilty of a felony version of theft when the verdict in open court did not so state."

{¶ 47} Wallace argues that the trial court, in rendering its verdict in open court, did not state that the theft offense of which she was convicted was a felony or that the amount involved would constitute a felony of the fourth degree. R.C. 2945.75 requires as follows:

{¶ 48} "(A) When the presence of one or more additional elements makes an offense one of more serious degree:

{¶ 49} " * * *

{¶ 50} "(2) A guilty verdict shall state either the degree of the offense of which the offender is found guilty, *or that such additional element or elements are present.* Otherwise, a guilty verdict constitutes a finding of guilty of the least degree of the offense charged." (Emphasis added.)

{¶ 51} In rendering the verdict in this case, the trial court specifically found that "the value of the amount of which [Franklin] was deprived is certainly more than $35,000." This additional element established a felony of the fourth degree under R.C. 2913.02. Wallace's sixth assignment of error is overruled.

{¶ 52} Wallace's seventh assignment of error provides:

{¶ 53} "7. Defendant was denied due process of law when the court amended the indictment."

{¶ 54} Wallace claims that the trial court erred by amending the indictment at the end of trial to include Franklin Milgrim Jr. as a victim. Crim.R. 7(D) permits a court to amend an indictment "in respect to any defect, imperfection, or omission in form or substance, or of any variance with the evidence, provided no change is made in the name or identity of the crime charged." See, also, R.C. 2941.30. It is well established that an indictment may

be amended at any time to name the victim or additional victims of a theft offense. *State v. Ervin* (June 11, 1987), Cuyahoga App. No. 52357, 1987 WL 12627; *State v. Bumagin* (Oct. 16, 1986), Cuyahoga App. No. 51090, 1986 WL 11647. Indeed, "[a]n amendment to an indictment which changes the name of the victim changes neither the name nor the identity of the crime charged." *State v. Owens* (1975), 51 Ohio App.2d 132, 149, 5 O.O.3d 290, 366 N.E.2d 1367; *State v. Smith*, Cuyahoga App. No. 79527, 2002-Ohio-2145, 2002 WL 832486.

{¶ 55} Further, because Wallace raised no objection during or after trial to this alleged error, she has waived the right to raise this issue on appeal. See *Ervin*, supra. Wallace's seventh assignment of error is overruled.

{¶ 56} "8. Defendant was denied due process of law when the court ordered restitution for an arbitrary amount of payment made to defendant as representative payee for Franklin Milgrim."

{¶ 57} Wallace claims that the trial court never made an accurate determination of the amount of restitution ordered.

{¶ 58} R.C. 2929.18 authorizes a court to order restitution "to the victim of the offender's crime * * * in an amount based on the victim's economic loss." The statute explicitly provides that a trial court need not hold a hearing on restitution unless the victim or offender disputes the amount. R.C. 2929.18(A)(1). In this case, Wallace neither objected to the restitution order at the time of sentencing, nor did she request a hearing.

{¶ 59} In determining a restitution award, there must be competent and credible evidence in the record from which the court may ascertain the amount of restitution to a reasonable degree of certainty. *State v. Johnson*, Washington App. No. 03CA11, 2004-Ohio-2236, 2004 WL 944384; *State v. Hicks*, Butler App. No. CA2002–08–198, 2003-Ohio-7210. In this case, competent, credible evidence was presented that the total amount of Social Security payments Wallace received for Franklin from April 1993 until April 2002 was $64,111. Evidence was presented that Franklin was not in the care or custody of Wallace during this time. Although there was some evidence that Wallace on occasion used the money for her son, such as buying a cake or small gifts or leaving approximately $25 per month for a period of about two years, this evidence justified only a small reduction in the amount of restitution to be ordered. Indeed, the record supports a finding that the vast majority of the money was used by Wallace for her own benefit.

{¶ 60} The trial court ordered 95 percent as restitution, which was $60,905.45. The court stated that the figure was reached upon the evidence heard, which reflected that a low percentage was spent for the benefit of Franklin.

{¶ 61} We find that the record contains competent, credible evidence that establishes to a reasonable degree of certainty that the victim suffered an economic loss of at least $60,905.45, as the result of the crime of which appellant was convicted. We accordingly overrule Wallace's eighth assignment of error.

Judgment affirmed.

ANN DYKE, P.J., and JAMES J. SWEENEY, J., concur.