JOURNAL ENTRY AND OPINION
{¶ 1} Defendant-appellant William Rodriguez appeals from his conviction on 17 counts of tampering with records. The indictment alleged that Rodiquez used a fake social security card to obtain titles to motor vehicles. He argues that (1) the state failed to present sufficient evidence to show that he knowingly defrauded the state of Ohio by using a forged social security card and (2) the statute of limitations had run on 10 of the counts. We conclude that the state failed to initiate criminal proceedings within the applicable statute of limitations on four counts of the complaint, so we reverse Rodriguez's convictions on counts 1-4 of the indictment. We affirm the convictions as to remaining counts.
 I {¶ 2} Rodriguez complains that the state failed to present sufficient evidence that he tampered with records.[1] He maintains the state did not offer any evidence to show that, while acting knowingly and with purpose to defraud, he
 {¶ 3} actually did defraud the state. He argues that the absence of his signature on the auto title applications constituted a failure of proof that barred his convictions.
 A *Page 4 {¶ 4} When considering the sufficiency of evidence supporting a conviction, we view the evidence in a light most favorable to the state to determine whether the state presented evidence showing all the elements of the offense. State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus, citing Jackson v. Virginia (1979), 443 U.S. 307, 319.
 B {¶ 5} The offense of tampering with records is defined by R.C.2913.42(A) and states:
 {¶ 6} "(A) No person, knowing the person has no privilege to do so, and with purpose to defraud or knowing that the person is facilitating a fraud, shall do any of the following:
 {¶ 7} "(1) Falsify, destroy, remove, conceal, alter, deface, or mutilate any writing, computer software, data, or record;
 {¶ 8} "(2) Utter any writing or record, knowing it to have been tampered with as provided in division (A)(1) of this section."
 {¶ 9} The Committee Comment to R.C. 2913.42 states:
 {¶ 10} "This section prohibits tampering with all private as well as public records, for fraudulent purposes, and thus expands upon former law which prohibited such conduct only with respect to public documents, wills, animal pedigrees, herd registers, and dairy cattle milk production. In general, the rationale for the section is that substantial harm can, in a given case, result from tampering *Page 5 
with a personal letter file, bank statement, or other private document, as well as from tampering with the correspondence files or records in a public office. The section recognizes, however, that substantial harm is more likely to result from tampering with wills or public records, and such conduct thus carries a more severe penalty. Any writing or record kept by or belonging to a governmental agency can be the subject of an offense under this section, and the document involved need not necessarily be a `public record' as defined in section 149.43 of the Revised Code."
 C {¶ 11} The state presented evidence to show that Rodriguez employed a "runner service" to go to a title bureau and "stand in line and get a thirty-day tag for a vehicle for him." The runner testified that Rodriguez gave her a signed power of attorney and a social security card and asked her to obtain a second 30-day tag for a truck. She said that the title bureau denied the application, saying there was "a problem with his transaction."
 {¶ 12} The deputy registrar of the license bureau used by the runner testified that he denied the application for the 30-day tag because Rodriguez's social security card appeared to be a forgery. The deputy registrar testified that he had been trained in fraud prevention and he noticed that certain security features were missing from Rodriguez's social security card. He also said that he noticed the ink on the card appeared to have run from exposure to water and that the card did not have a holographic seal. Finally, the first name of the alleged cardholder was spelled *Page 6 
"Willian." The deputy registrar entered the social security number into the Bureau of Motor Vehicles' data base and learned that the social security number did not appear in the data base. The deputy registrar told the runner that the bureau would not issue the 30-day tag and then called the state highway patrol.
 {¶ 13} The state trooper who investigated the matter testified that he contacted the Social Security Administration and learned that the social security number on the card had not been issued in the name of either "Willian" or William Rodriguez. After contacting the title bureau, the trooper discovered that there were 17 other motor vehicle titles with Rodriguez's name, and that the same fake social security number was used on the application for all of those titles. The trooper also said that Rodriguez used a different social security number on other title applications that were not charged in the indictment.
 {¶ 14} A representative of the Inspector General of the Social Security Administration testified that the card submitted to the deputy registrar was fake. He detailed how the card lacked certain telltale security measures, contained a misspelled first name, and that the social security number indicated that the card would have been issued in 1994 from the state of Texas. The representative said that the name "Willian Rodriguez" did not match the officially-issued social security number.
 D *Page 7 {¶ 15} Viewing the evidence in a light most favorable to the state, we conclude that it establishes all the essential elements of tampering with records. The state established that Rodriguez knowingly perpetrated a fraud against the state. The evidence showed that the social security card given to the "runner" had been forged. Rodriguez's knowledge of this fact could be inferred from the misspelled name "Willian" that appeared on the card. Moreover, a reasonable trier of fact could infer that Rodriguez had obtained the card by illicit means because the card had been issued from the state of Texas and the number on the card had been registered in the name of another person. These facts constitute circumstantial evidence to show that Rodriguez knew that the social security number had been forged and his use of the card constituted a fraud against the state of Ohio.
 {¶ 16} Finally, we reject Rodriguez's argument that this was merely a "falsification case." Presumably, he refers to R.C. 2921.13(A)(5), which states "no person shall knowingly make a false statement, or knowingly swear or affirm the truth of a false statement previously made, when * * * the statement is made with purpose to secure the issuance by a governmental agency of a license, permit * * *." Falsification occurs, as relevant here, when a defendant makes a false statement in order to obtain a governmental license or permit; for example, knowingly stating an incorrect age in order to obtain a driver's license. Tampering with records occurs *Page 8 
under R.C. 2913.42(A)(2) when the offender utters[2] a falsely obtained document, knowing that document had been falsified. By using a falsely obtained document, Rodriguez tampered with records.
 {¶ 17} This conviction stands regardless of whether Rodriguez actually signed the title application. The evidence showed that Rodriguez made the application for a second, 30-day license tag, and that the "runner" performed the service of taking the application to the license bureau under a power of attorney from Rodriguez. She acted as his agent, at his direction. In any event, the evidence showed that the power of attorney used by the runner had been supplied by the Bureau of Motor Vehicles (BMV Form 5736), and that Rodriguez had signed this power of attorney and listed his social security number on the power of attorney. By giving the runner his forged social security card to submit with the application, he completed the essential elements of tampering with records.
 II {¶ 18} Rodriguez next argues that the court abused its discretion when it denied his motion to dismiss counts 1-10 of the indictment on grounds that the six-year statute of limitations had run on those counts.
 {¶ 19} In State v. Climaco, Climaco, Seminatore, Lefkowitz GarafoliCo., L.P.A., 85 Ohio St.3d 582, 586, 1999-Ohio-408, the supreme court stated: *Page 9 
 {¶ 20} "The primary purpose of a criminal statute of limitations is to limit exposure to prosecution to a certain fixed period of time following the occurrence of those acts the General Assembly has decided to punish by criminal sanctions. Toussie v. United States (1970), 397 U.S. 112, 114-115, 90 S. Ct. 858, 860, 25 L. Ed. 2d 156, 161. This limitation is designed to protect individuals from having to defend themselves against charges when the basic facts may have become obscured by the passage of time and to minimize the danger of official punishment because of acts in the far-distant past.' Id. Additionally, such a time limit has the salutary effect of encouraging law enforcement officials to promptly investigate suspected criminal activity. Id. We recognized these purposes in [State v. Hensley (1991), 59 Ohio St.3d 136, 138, 571
N.E.2d at 714], where we found that the intent of R.C. 2901.13 is to discourage inefficient or dilatory law enforcement rather than to give offenders the chance to avoid criminal responsibility for their conduct. We stated, `[t]he rationale for limiting criminal prosecutions is that they should be based on reasonably fresh, and therefore more trustworthy evidence,' quoting the Ohio Legislative Service Commission comment to R.C. 2901.13." (Internal quotation marks omitted.)
 {¶ 21} The statute of limitations for a felony is six years. See R.C.2901.13(A)(1)(a). Tampering with records is a third degree felony if the record is kept by or belongs to a local, state, or federal governmental entity. See R.C. 2913.41(B)(4). A motor vehicle title is an official record of the state of Ohio. Cf. *Page 10 State v. Harper (Dec. 21, 2000), Franklin App. Nos. 00AP-23 — 00AP-27 (falsified license applications fell within R.C. 2913.42 because the Bureau of Motor Vehicles is a government office).
 {¶ 22} The grand jury returned the indictment on April 12, 2006. Counts 1-10 were charged as having been committed between November 16, 1997 and March 29, 2000. These counts were not charged within the six-year statute of limitations.
 {¶ 23} The state argues that the limitations period does not apply because Rodriguez engaged in a course of conduct by repeatedly using a social security number that did not belong to him.
 {¶ 24} R.C. 2901.13(D) states that "an offense is committed when every element of the offense occurs. In the case of an offense of which an element is a continuing course of conduct, the period of limitation does not begin to run until such course of conduct or the accused's accountability for it terminates, whichever occurs first."
 {¶ 25} The 17 counts of the indictment related to 17 different applications for a title to a motor vehicle. All 17 of these applications used the same fraudulent social security number. These 17 offenses were distinct, and each was completed when Rodiquez made the application for a title.
 {¶ 26} Our decision in State v. Wallace, 160 Ohio App.3d 528,2005-Ohio-1746, is not to the contrary. Wallace had been found guilty of a single count of theft after she made an application for social security benefits for her minor son, even *Page 11 
though she had lost legal custody of the son and he did not live with her at the time she submitted the application. Wallace collected social security checks from April 1993 to April 2002. On appeal from her conviction, Wallace argued that her application for social security benefits had been made more than six years before she had been indicted, so her prosecution was barred by the six-year statute of limitations. We rejected that argument, stating that:
 {¶ 27} "* * * the record supports a finding that Wallace engaged in a continuous course of deception by reporting that her son was still residing with her. Wallace also continued to deprive her son of his benefit distributions and take the money for her own use until April 2002. Accordingly, we find the statute of limitations did not commence until the theft ended in April 2002." Id. at 4|29.
 {¶ 28} Our decision in Wallace is consistent with our conclusion in this case. Wallace made one application for benefits and then accepted those benefits over a period of nine years. Her acceptance of benefits was thus a continuing course of conduct over a period of years. In contrast, the facts of this case show that each of the 17 counts of tampering with evidence was completed when Rodriguez submitted the application for that particular title using the fraudulent social security number.
 {¶ 29} The state also argues that the statute of limitations was tolled from March 2003 to May 2004 because a capias had been issued against Rodriguez in CR 427177. R.C. 2913.01(G) states, "[t]he period of limitation shall not run during any time when the accused purposely avoids prosecution. Proof that the accused *Page 12 
departed this state or concealed the accused's identity or whereabouts is prima-facie evidence of the accused's purpose to avoid prosecution."
 {¶ 30} The trial transcript shows the court referred to the issuance of a capias by saying:
 {¶ 31} "With respect to the statute of limitations running, how I read the statute of limitations, I do look at a number of reasons, the tolling [sic] statutes of limitations with respect to the capias that you had for yourself between March of 2003 and May of 2004."
 {¶ 32} The court referred to an order issued in CR 427177. That was an earlier case in which the state charged Rodriguez in an identical indictment. The state dismissed the indictment without prejudice. A journal entry from that case dated March 26, 2003 states, "Capias issued on 03/26/03." Another journal entry, dated May 7, 2004, states, "Capias returned, deft. in custody."
 {¶ 33} A "capias" is an arrest warrant. In cases when a capias issues following indictment, its use indicates that the accused has failed to appear for arraignment as ordered by the court. See, generally, McGinty, "Straight Release:" Justice Delayed, Justice Denied (2000), 48 Clev.St.L.R. 235, 242-243.[3] The *Page 13 
issuance of a capias in CR 427177 indicates that Rodriguez failed to appear for arraignment. This constitutes "time when the accused purposely avoids prosecution" and cannot be included within the statute of limitations.
 {¶ 34} The statute of limitations was tolled for just over 13 months, from March 2003 to May 2004. Counts 11-17 charged offenses committed after April 12, 2000, so they are demonstrably within the statute of limitations and tolling does not alter their validity. Counts 5-10, all of which were committed between March 23, 1999 and March 29, 2000, were subject to tolling of 13 months, and fall within the statute of limitations. Counts 1-4, however, which were committed between November 1997 and October 1998, remain outside the six-year statute of limitations, even with 13 months of tolling. We therefore vacate Rodriguez's convictions on counts 1-4 of the indictment. Counts 5-17 remain extant.
 {¶ 35} Judgment affirmed in part; reversed in part.
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal. It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence. *Page 14 
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
MELODY J. STEWART, JUDGE
JAMES J. SWEENEY, P.J., CONCURS
MARY EILEEN KILBANE, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE OPINION
[1] Although Rodriguez's first assignment of error is phrased in terms of the "manifest weight of the evidence," his argument to that assignment of error is based on the sufficiency of the evidence. The second assignment of error complains that the "verdict is not supported by sufficient evidence," but "expressly adopts and incorporates by reference" the arguments made under the first assignment of error. We have consolidated these two similar assignments of error.
[2] R.C. 2913.01(H) defines the word "utter" as "to issue, publish, transfer, use, put or send into circulation, deliver or display."
[3] Judge McGinty explains that the Cleveland Police Department has a 24-hour "charge-or-release rule" — except in cases involving the most serious offenses, arrested persons are released within 24 hours after arrest and notified by mail when criminal charges are brought against them. Id. at 236. On an "average" day in the arraignment room, "half the persons scheduled to appear fail to show-up to answer the felony indictments brought against them." Id.