**Certiorari Denied, November 18, 2013, No. 34,376**

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number:  2014-NMCA-003**

**Filing Date:  October 2, 2013**

**Docket No. 31,477**

**STATE OF NEW MEXICO,**

>       **Plaintiff-Appellant,**

**v.**

**DONALD HERRERA,**

>       **Defendant-Appellee,**

**Consolidated with Docket No. 31,479**

**STATE OF NEW MEXICO,**

>       **Plaintiff-Appellant,**

**v.**

**BILLY BACA,**

>       **Defendant-Appellee.**

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Jacqueline D. Flores, District Judge**

Gary K. King, Attorney General
Nicole Beder, Assistant Attorney General
Santa Fe, NM

for Appellant

Bennett J. Bauer, Acting Chief Public Defender
J.K. Theodosia Johnson, Assistant Appellate Defender
Santa Fe, NM

1

for Appellees

**OPINION**

**WECHSLER, Judge.**

**{1}**     In this consolidated appeal, the State challenges the dismissal of two indictments for fraud.  The indictments allege that Defendants Donald Herrera and Billy Baca fraudulently obtained funds from the United States Department of Veterans Affairs (the VA) in violation of NMSA 1978, Section 30-16-6 (2006). Defendants filed identical dismissal motions, arguing that the district court lacked jurisdiction on the basis of federal preemption, and, following a consolidated hearing on those motions, the district court dismissed both indictments.  We hold that the Veterans' Benefits Act neither preempts the State's prosecution nor creates an unavoidable conflict with state law.  Accordingly, we reverse and remand for further proceedings.

**BACKGROUND**

**{2}**     Defendants were each indicted for one count of fraud, statutorily defined as "the intentional misappropriation or taking of anything of value that belongs to another by means of fraudulent conduct, practices[,] or representations." Section 30-16-6(A).    The misappropriated property contemplated in both indictments consists of reimbursements for travel to and from medical appointments, which expenses may be reimbursed by the VA pursuant to 38 U.S.C. § 111 (2006).  Defendant Herrera is alleged to have fraudulently obtained travel reimbursements from the VA in an amount exceeding $20,000, a second degree felony.  *See* § 30-16-6(F).  In a separate case, Defendant Baca is alleged to have fraudulently obtained similar reimbursements in an amount between $2,500 and $20,000, a third degree felony.  *See* § 30-16-6(E).

**{3}**     Defendants' motions to dismiss asserted that the State is without jurisdiction to prosecute these cases because Congress has chosen to "occupy the field" by enacting the Veterans' Benefits Act (the Act), Title 38 of the United States Code (Pub. L. No. 85-857, 72 Stat. 1105).  Defendants also asserted that their prosecutions are preempted because, under the facts of this case, New Mexico's fraud statute is in conflict with a provision of the Act that prescribes a punishment for fraud committed against the VA.

**{4}**     The district court held a consolidated hearing on the motions.  At the hearing, Defendants presented evidence consisting of photographs of the VA facilities in Albuquerque, New Mexico, where Defendants are alleged to have obtained the travel reimbursements.  Those photographs tended to support Defendants' assertion that the VA hospital is owned by the federal government, and several photographs also depicted signs on the VA grounds announcing that possession of firearms at the facility was prohibited by federal law and that traffic violators would be issued federal citations.

2

**{5}** At the conclusion of the hearing, the district court stated that subject matter jurisdiction was lacking "because the [VA is] so completely and thoroughly regulated by the [f]ederal [g]overnment[.]" It subsequently entered orders dismissing both cases. Pursuant to NMSA 1978, Section 39-3-3 (1972), the State appeals both orders of dismissal, and this Court consolidated the appeals.

**PREEMPTION**

**{6}** Federal preemption results from "the basic structure of our federal system, in which [the s]tates and the [federal g]overnment are separate political communities." *United States v. Wheeler*, 435 U.S. 313, 320 (1978), *superseded by statute on other grounds as stated in United States v. Lara*, 541 U.S. 193 (2004); *see Montoya v. Mentor Corp.*, 1996-NMCA-067, ¶ 6, 122 N.M. 2, 919 P.2d 410. Pursuant to that dual system of governance, "the [s]tates possess sovereignty concurrent with that of the [f]ederal [g]overnment, subject only to limitations imposed by the Supremacy Clause." *Tafflin v. Levitt*, 493 U.S. 455, 458 (1990). The Supremacy Clause of the United States Constitution gives Congress authority to preempt state law by declaring that "the [l]aws of the United States . . . shall be the supreme [l]aw of the [l]and . . . any [t]hing in the [c]onstitution or [l]aws of any [s]tate to the [c]ontrary notwithstanding." U.S. Const. art. VI, cl. 2; *Montoya*, 1996-NMCA-067, ¶ 6.

**{7}** Because the question of whether state law has been preempted by federal legislation depends upon whether Congress intended such a result, "[t]he purpose of Congress is the ultimate touchstone." *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 208 (1985) (internal quotation marks and citation omitted). In discerning that purpose, courts look to whether Congress has expressly preempted state law and, in the absence of express preemption, to whether such a purpose can be implied from the structure and purpose of the federal legislation in question. *Gade v. Nat'l Solid Wastes Mgmt. Ass'n*, 505 U.S. 88, 96, 98 (1992).

**{8}** Defendants in these cases acknowledge that no federal provision expressly preempts Section 30-16-6, and the district court rested its decision upon implied preemption. Thus, we limit our analysis to implied preemption.

**{9}** Courts have recognized two distinct forms of implied preemption: field preemption and conflict preemption. *Gade*, 505 U.S. at 98; *United Nuclear Corp. v. Gen. Atomic Co.*, 1980-NMSC-094, ¶ 186, 96 N.M. 155, 629 P.2d 231. Field preemption occurs when "federal law so occupies the field that state courts are prevented from asserting jurisdiction." *State v. McHorse*, 1973-NMCA-144, ¶ 16, 85 N.M. 753, 517 P.2d 75. Congressional intent to occupy the field may be found if a "scheme of federal regulation [is] so pervasive as to make reasonable the inference that Congress left no room for the [s]tates to supplement it." *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947). Conflict preemption arises when there is "an unavoidable conflict between the state law and the federal law, or [where] the state law is an obstacle to the full accomplishment of congressional objectives." *Alliance Health of Santa Teresa, Inc. v. Nat'l Presto Indus., Inc.*, 2005-NMCA-053, ¶ 31, 137 N.M. 537, 113 P.3d 360 (internal quotation marks and citation omitted). Such a conflict should be

3

found, however, only if "it is impossible to comply with both state and federal requirements, or if state law obstructs the congressional objectives underlying the federal law." *Azar v. Prudential Ins. Co. of Am.*, 2003-NMCA-062, ¶ 35, 133 N.M. 669, 68 P.3d 909.

**{10}** There is "a strong presumption against preemption[,]" especially in areas involving "historic police powers of the [s]tates." *Montoya*, 1996-NMCA-067, ¶ 7 (internal quotation marks and citation omitted). This presumption exists even in cases arising solely under federal law. *Gulf Offshore Co. v. Mobil Oil Corp*., 453 U.S. 473, 478-79 (1981). When, as in this case, a state's historic police powers are at issue, courts will find federal preemption only when that is "the clear and manifest purpose of Congress." *Montoya*, 1996-NMCA-067, ¶ 7 (internal quotation marks and citation omitted).

**{11}** Prosecutions for fraud fall squarely within the "historic police powers" of New Mexico. *Id.* (internal quotation marks and citation omitted); *see also Abbate v. United States*, 359 U.S. 187, 195 (1959) (noting that "the [s]tates under our federal system have the principal responsibility for defining and prosecuting crimes"). Fraud has been prosecuted as a crime in New Mexico since before the advent of statehood, and the fraud statute at issue in this case can be traced to the first criminal code of the State of New Mexico. *See Territory v. Hubbell*, 1906-NMSC-033, ¶ 5, 13 N.M. 579, 86 P. 747 (involving indictment for false pretenses and discharge of the defendant); NMSA 1915, § 1551 (1854) (criminalizing "cheats and false pretenses"). Thus, Defendants have the burden of establishing Congress's "clear and manifest" intent to preempt state law. *Montoya*, 1996-NMCA-067, ¶ 7 (internal quotation marks and citation omitted); *see Self v. United Parcel Serv., Inc.*, 1998-NMSC-046, ¶ 7, 126 N.M. 396, 970 P.2d 582 (stating that the burden is on the party claiming preemption occurred).

**{12}** In order to meet that burden, Defendants claim that the necessary congressional intent can be implied from the comprehensive nature of the Act. In addressing that claim, we must examine the purpose and structure of the federal law establishing and governing the VA. *See Gade*, 505 U.S. at 96. This legislative scheme is expansive, comprising the entirety of Title 38 of the United States Code and governing substantially every aspect of the provision of federal benefits to veterans of the armed forces. The VA, which is charged with administering all of the veterans' benefits programs established therein, traces its history to 1930, when the agency was established by executive order. Exec. Order No. 5398. The G.I. Bill of Rights greatly expanded the VA's mission in 1944 in order to "provide [f]ederal [g]overnment aid for the readjustment in civilian life of returning World War II veterans." G.I. Bill of Rights, Pub. L. No. 78-346, 58 Stat. 284. In 1958, all of the laws governing the administration of federal veterans' benefits were consolidated into Title 38 of the United States Code. *See* Pub. L. No. 85-857, 72 Stat. 1105.

**{13}** Ever since, Congress has periodically reviewed and amended Title 38 to assure "reasonable and adequate compensation for disabled veterans and their families." S. Rep. No. 98-604, III at 24 (1984), *reprinted in* 1984 U.S.C.C.A.N. 4479, 4480, 4488. In performing that task, Congress has explicitly recited that "the basic purpose of the disability

4

compensation program, throughout its history, has been one of providing relief from the impaired earning capacity of veterans disabled as the result of their military service." H.R. Rep. No. 96-1155, at 4 (1980), *reprinted in* 1980 U.S.C.C.A.N. 3307, 3310.

**{14}** A review of Title 38 and its extensive legislative history indicates that Congress's central purpose therein is to provide benefits to veterans of the armed forces in a wide variety of circumstances. Because of the inherent complexity involved in administering the federal benefits at issue in Title 38, this Court is reluctant to draw from the mere fact of that complexity an implication that Congress necessarily intended to displace all state law that touches upon any topic addressed in Title 38. *See N.Y. State Dep't of Soc. Servs. v. Dublino*, 413 U.S. 405, 415 (1973) ("The subjects of modern social and regulatory legislation often by their very nature require intricate and complex responses from the Congress, but without Congress necessarily intending its enactment as the exclusive means of meeting the problem[.]").

**{15}** Further, implicit in any assertion that Congress has "occupied the field" by its enactments, is the question of identifying the field that has been occupied. Indeed, "[e]very [a]ct of Congress occupies some field, but we must know the boundaries of that field before we can say that it has precluded a state from the exercise of any power reserved to it by the Constitution." *Hines v. Davidowitz*, 312 U.S. 52, 78 (1941) (Stone, J., dissenting). To the extent that the field occupied in these cases is the field of providing veterans' benefits, the fraud prosecutions at issue in this case do not intrude upon that province.

**{16}** Defendants' contrary claim—that their prosecutions necessarily require the district court to intrude upon the VA's determination of entitlement to benefits—is without merit. That claim relies upon various provisions of Title 38, committing to the Secretary of Veterans Affairs discretion to determine what application forms and other methods of proof will be used in determining entitlement to benefits and providing for administrative review of benefits determinations. *See* 38 U.S.C. §§ 501, 511 (2006). Such administrative review falls within the exclusive jurisdiction of the Board of Veterans' Appeals (the Board), subject only to judicial review by the United States Court of Appeals for Veterans Claims. 38 U.S.C. §§ 7104, 7252 (2006). The prosecutions of these cases, however, do not require the district court to pass upon the propriety of the VA's decision to provide travel reimbursements to Defendants pursuant to Title 38. Instead, the district court proceedings will determine whether Defendants engaged in "fraudulent conduct, practices[,] or representations," in the process of obtaining those reimbursements, thereby violating New Mexico law. *See* § 30-16-6(A).

**{17}** Regardless of the outcome of these prosecutions, the VA's decision to pay the underlying travel reimbursements will be unaffected. Federal law does provide that fraudulently obtained benefits may be recovered by the VA. *See* 38 U.S.C. § 6103(a) (2006) (prescribing forfeiture of benefits fraudulently obtained). And regulations promulgated by the VA provide an administrative mechanism by which forfeiture of benefits may be reviewed by the Board. *See* 38 C.F.R. § 20.101(a)(20) (2001). Defendants selectively quote

5

the relevant regulation to this Court in an effort to suggest that the Board—and not the district court—has exclusive jurisdiction over any "claims or benefits for fraud." In context, however, the regulation quoted recites that the Board's jurisdiction includes issues of "[*f*]*orfeiture* of rights, claims or benefits for fraud, treason, or subversive activities[.]" 38 C.F.R. § 20.101(a)(20) (emphasis added). Forfeiture of veterans' benefits is a different matter from a criminal prosecution. Indeed, even the pendency of a forfeiture review before the Board does not prevent a criminal prosecution from proceeding. *See United States v. Roberts*, 534 F.3d 560, 568 (7th Cir. 2008) (finding criminal prosecution proper notwithstanding pending appeal before Court of Appeals for Veterans Claims).

**{18}** It may be that the conduct alleged in these indictments would be sufficient to require that Defendants "forfeit all rights, claims, and benefits under all laws administered by the [VA]," pursuant to relevant federal law. 38 U.S.C. § 6103(a). Such a forfeiture, however, was not a matter before the district court. Instead, the issue before the district court was solely whether Defendants have violated New Mexico law, and nothing about these prosecutions intrudes upon or prevents the VA from making its own determination about whether Defendants' conduct—if proved—should also work a forfeiture with regard to benefits administered by the VA.

**{19}** Defendants also direct this Court's attention to 38 U.S.C. § 6102 (2006), which provides a punishment for fraudulently obtaining funds from the VA. With regard to that statute, Defendants assert that the existence of a federal punishment for the conduct at issue in these cases supports their claim of field preemption. They also asserted in the district court the possibility of conflict preemption by suggesting that New Mexico's fraud statute, which prescribes a penalty that could differ from that authorized by § 6102, creates a conflict between the state and federal statutory schemes. However, as a general rule, the "existence of federal legislation in an area of law also addressed by state legislation, without more, is not enough to show preemption." *Ashlock v. Sunwest Bank of Roswell, N.A.*, 1988-NMSC-026, ¶ 11, 107 N.M. 100, 753 P.2d 346, *overruled on other grounds by Gonzales v. Surgidev Corp.*, 1995-NMSC-036, 120 N.M. 133, 899 P.2d 576. When state and federal statutes serve the same purpose, field preemption requires that "the purpose of the federal statute would to some extent be frustrated by the state statute." *Colo. Anti-Discrimination Comm'n v. Cont'l Air Lines, Inc.*, 372 U.S. 714, 722 (1963).

**{20}** In the criminal-law context, these basic principles are amply demonstrated by the long history of federal criminal jurisprudence dealing with whether prosecutions by both state and nation violate the Fifth Amendment's proscription against double jeopardy. *See, e.g.*, *United States v. Lanza*, 260 U.S. 377, 385 (1922) (holding that "conviction and punishment in a state court under a state law . . . is not a bar to a prosecution in a court of the United States under the federal law for the same acts"). In the context of double jeopardy, the United States Supreme Court declared, over 150 years ago, that:

> [e]very citizen of the United States is also a citizen of a [s]tate or territory. He may be said to owe allegiance to two sovereigns, and may be liable to

6

punishment for an infraction of the laws of either. The same act may be an offence or transgression of the laws of both. . . . That either or both may (if they see fit) punish such an offender, cannot be doubted.

*Moore v. Illinois*, 55 U.S. 13, 20 (1852). In the same context, the Supreme Court held that federalism requires that "[e]ach government in determining what shall be an offense against its peace and dignity is exercising its own sovereignty, not that of the other." *Lanza*, 260 U.S. at 382. And, "[i]t follows that an act denounced as a crime by both national and state sovereignties is an offense against the peace and dignity of both and may be punished by each." *Id.*

{21}    Nonetheless, Defendants claim that the inclusion of a penalty provision at 38 U.S.C. § 6102 "evidences congressional intent that fraudulent veterans' benefits be a federal, not state, crime." Even assuming that the fraud alleged in these cases constitutes a federal crime, pursuant to that federal statute, it does not follow that the State is thereby prevented from prosecuting that same fraud pursuant to Section 30-16-6 because the underlying conduct "is an offense against the peace and dignity of both [sovereigns]." *Lanza*, 260 U.S. at 382; *see also State v. Haddenham*, 1990-NMCA-048, ¶¶ 38-39, 110 N.M. 149, 793 P.2d 279 (finding no conflict between state and federal laws proscribing possession of firearms by felons).

{22}    Against this backdrop of well-settled law permitting criminal prosecutions by both the United States and states in our federal system, we must determine whether the "federal law so occupies the field that state courts are prevented from asserting jurisdiction." *McHorse*, 1973-NMCA-144, ¶ 16. There can be no doubt that both 38 U.S.C. § 6102 and New Mexico's Section 30-16-6 serve the purpose of deterring and punishing fraud. Thus, the question is whether New Mexico's fraud statute somehow frustrates the purpose of the federal statute. *Colo. Anti-Discrimination Comm'n*, 372 U.S. at 722 (noting a court must determine "that the purpose of the federal statute would to some extent be frustrated by the state statute" before finding the latter preempted by the former). We conclude that it does not. Given that state prosecutions cannot be set up as a bar to federal prosecutions, we simply cannot infer that Congress intended, merely by enacting its own punishment for fraud on the VA, to preclude state prosecutions for the same conduct. *See Rice*, 331 U.S. at 230 (stating that federal legislation must "make reasonable the inference that Congress left no room for the [s]tates to supplement it").

{23}    Defendants also assert conflict preemption. To show conflict preemption, Defendants must show an "unavoidable conflict between the state law and the federal law[.]" *Alliance Health*, 2005-NMCA-053, ¶ 31. Nothing in these cases suggests that it is impossible to comply with both New Mexico's fraud statute and federal law, nor does anything suggest that enforcement of the state statute obstructs any congressional objectives underlying the enactment of its own penalty for fraud. Indeed, the State's prosecution in these cases will do nothing to hinder the federal statutory scheme because federal authorities will remain free to pursue their own prosecutions under federal law should they choose to do so. *See Lanza*, 260 U.S. at 385 (holding that state conviction is not a bar to federal

conviction pursuant to federal law "for the same acts"). Because of the complimentary purpose of both statutes—to deter and punish fraud—and the fact that neither statute interferes with the operation of the other, there simply is no conflict between the state and federal statutes at issue in these cases. *See Azar*, 2003-NMCA-062, ¶ 35 (noting that a conflict "does not exist unless it is impossible to comply with both state and federal requirements, or if state law obstructs the congressional objectives underlying the federal law").

**{24}** We also note that, although these cases present a question of first impression in New Mexico—whether prosecutions for fraud committed against agencies of the federal government are preempted by the federal laws establishing and governing such agencies—cases from other jurisdictions uniformly support our conclusion that state law is not preempted under these circumstances. In both *Commonwealth v. Morris*, 575 A.2d 582, 583 (Pa. Super. Ct. 1990), and *State v. Wallace*, 2005-Ohio-1746, 828 N.E.2d 125, ¶ 20, state appellate courts held that federal statutes imposing penalties for improperly obtaining Social Security benefits do not preempt state criminal prosecutions for theft. Similarly, in *State v. Jones*, 958 P.2d 938, 939 (Utah Ct. App. 1998), a defendant was convicted of communication fraud in connection with his application to obtain benefits from the federal employees retirement system. The Utah trial court's jurisdiction over that prosecution was affirmed, notwithstanding the comprehensiveness of the retirement system. *Id.* at 941, 943 (holding Congress did not intend to preempt "peripheral" matters such as state criminal actions arising from fraudulent claims). In *People v. Lewis*, 693 N.E.2d 916, 917 (Ill. App. Ct. 1998), the defendant was convicted of theft for filing a fraudulent unemployment benefits claim with the United States railroad retirement board. There, as here, the federal statutory scheme contained a provision making punishable the filing of a fraudulent claim. *Id.* at 917-18. Nonetheless, the Illinois Court of Appeals, like this Court, held such a provision insufficient to suggest "that Congress intended that punishment to be the only punishment" and rejected the defendant's claims of both field and conflict preemption. *Id.* at 919.

**{25}** Lastly, we pause to address the evidence received by the district court on the issue of whether the United States government owns the VA hospital in Albuquerque. We do so because Defendants' argument at the consolidated hearing relied heavily upon that evidence without ever explaining the manner in which ownership of that property could affect the jurisdictional analysis at issue. Nonetheless, if that evidence was sufficient to establish the exclusive jurisdiction of the federal government over the conduct alleged in the indictments, this Court would affirm the dismissal of those indictments under the right-for-any-reason doctrine. *See Cordova v. World Fin. Corp. of N.M.*, 2009-NMSC-021, ¶ 18, 146 N.M. 256, 208 P.3d 901 ("[A]ppellate courts will affirm a district court's decision if it is right for any reason, so long as the circumstances do not make it unfair to the appellant to affirm.").

**{26}** As more fully discussed above, the preemption doctrine focuses upon the intent of Congress to preempt state law with its own enactments. *See Allis-Chalmers*, 471 U.S. at 208 (noting that congressional purpose "is the ultimate touchstone" in preemption analysis (internal quotation marks and citation omitted)). Although property ownership plays no part

in that analysis, the United States Constitution does give to Congress the power to acquire property within a state and "to exercise [exclusive legislative] [a]uthority over all [p]laces purchased by the [c]onsent of the [l]egislature of the [s]tate in which the [s]ame shall be, for the [e]rection of [f]orts, [m]agazines, [a]rsenals, dock-[y]ards, and other needful [b]uildings[.]" U.S. Const. art. I, § 8, cl. 17. As a result, if the New Mexico Legislature consents to the federal government acquiring property within New Mexico, such as the VA hospital at issue in these cases, Congress is empowered to "acquire derivative legislative power from [the s]tate." *Kleppe v. New Mexico*, 426 U.S. 529, 542 (1976). It is thus possible for the federal government to "acquire [either] exclusive or partial jurisdiction over lands within a [s]tate by the [s]tate's consent or cession[.]" *Id.* Nonetheless, "[a]bsent consent or cession a [s]tate undoubtedly retains jurisdiction over federal lands within its territory[.]" *Id.* at 543. In New Mexico, the current procedures for providing the necessary consent and for ceding exclusive or partial jurisdiction to the federal government over a federal enclave within New Mexico are codified at NMSA 1978, Section 19-2-2 (1963).

**{27}** Although Defendants introduced evidence suggesting that the VA hospital is owned by the federal government and that at least some federal laws are enforced at the hospital property, no evidence was introduced that New Mexico has ceded its own jurisdiction with regard to that property, either pursuant to Section 19-2-2 or otherwise. Further, although Defendants asserted that federal ownership of the hospital somehow supported their theory of preemption, they articulated no legal theory actually connecting ownership of that hospital to the jurisdictional issue before the district court. Defendants did not explain how federal ownership of that hospital could lead to it becoming a federal enclave, beyond the jurisdictional reach of the state; rather, they argued preemption. Whether the VA hospital sits on federal land, however, is irrelevant to the question of whether New Mexico's criminal statutes are preempted by federal legislation.

**{28}** As a result, the federal government's potential ownership of that hospital cannot have formed any proper part of the district court's basis for dismissing the cases here appealed. The issue actually litigated before the district court was whether New Mexico's fraud statute has been preempted by federal law, and this Opinion is confined to addressing that question.

**CONCLUSION**

**{29}** The Veterans' Benefits Act neither preempts the State's prosecution nor creates an unavoidable conflict with state law. Accordingly, the orders of dismissal are reversed, and the cases are remanded to proceed on the indictments.

**{30}** **IT IS SO ORDERED.**

_____
**JAMES J. WECHSLER, Judge**

**WE CONCUR:**

9

_____

**RODERICK T. KENNEDY, Chief Judge**

_____

**JONATHAN B. SUTIN, Judge**

**Topic Index for *State v. Herrera*, Nos. 31,477/31,479**

**CONSTITUTIONAL LAW**
Double Jeopardy

**CRIMINAL LAW**
Fraud

**FEDERAL LAW**
Federal Jurisdiction
Preemption
Veteran's Benefits