JOURNAL ENTRY AND OPINION *Page 3 
{¶ 1} Defendant-appellant, Kevin Hughley ("appellant"), appeals the decision of the lower court. Having reviewed the arguments of the parties and the pertinent law, we hereby affirm in part, reverse in part, and remand.
 {¶ 2} I.
 {¶ 3} Appellant's appeal involves three separate lower court cases, CR-462014, CR-473878, and CR-481899. Although the trials were not consolidated, the appeals have been filed under a single appellate case number, 90323. The three trials were heard consecutively in the Cuyahoga County Common Pleas Court in front of a single judge. Appellant represented himself with the assistance of the public defender's office.
 {¶ 4} CR-462014 — Summer 2004
 {¶ 5} According to the facts, James Altman is a special agent for the Inspector General's Office, Social Security Administration. Altman was contacted by the Ohio Bureau of Motor Vehicles ("BMV") to verify appellant's social security number. Altman found that Kevin Hughley, a.k.a. Hakeem Sultaana, had two social security numbers. Appellant had two social security numbers because he had requested a duplicate. Altman confirmed that appellant was not issued a new social security number as Sultaana.
 {¶ 6} Barry Solomon, an investigator for the BMV, began an investigation into the conflict. Solomon discovered that appellant had used the name Hakeem Sultaana and applied for a state identification card. Further investigation revealed *Page 4 
that appellant fraudulently indicated in his BMV 2026 application that his social security number ended in 9870. The investigation also revealed that appellant indicated to a BMV worker that he did not have a current driver's license or identification card, that his driving privileges were not revoked, and that he did not have any citations for violations of any motor vehicle law. These answers were fraudulent, as appellant knew that he had a driver's license, a noncompliance suspension, and three warrant blocks at the time.
 {¶ 7} In State v. Hughley, CR-462014, appellant was indicted on eight counts of forgery, eight counts of uttering, and eight counts of tampering with records. These offenses occurred on June 17, 2004. On February 20, 2005, appellant pleaded not guilty to all counts. Trial commenced on July 16, 2007. The state presented four witnesses and the defense did not present any witnesses. At the close of the state's case, the defense moved for acquittal on counts 15, 16, 21, and 24, pursuant to Crim. R. 29, and the court denied the defense's motion for acquittal. The prosecution noted that counts 11, 12, and 22 had been nolled prior to trial. On July 18, 2007, the jury rendered guilty verdicts on all counts submitted.[1]
 {¶ 8} June 17, 2004
 {¶ 9} More specifically, in CR-462014 appellant was indicted for three counts of forgery under R.C. 2913.31 in relation to a state ID application, Bureau of Motor *Page 5 
Vehicles form 2026, and a state of Ohio ID (counts 1, 3, and 5). Appellant was also indicted for three counts of uttering under R.C. 2913.31 (counts 2, 4, and 6) and tampering with records under R.C. 2913.42 (counts 17, 18, and 19) for each of the above listed items. Appellant was convicted of all crimes committed on this day.
 {¶ 10} July 13, 2004
 {¶ 11} In addition to appellant's criminal activity on June 17, 2004, he also engaged in criminal activity on July 13, 2004. For appellant's criminal activity on July 13, 2004, he was indicted for three counts of forgery under R.C. 2913.31 in relation to a state driver's license application, BMV form 2026, and a HP form 20C (counts 7, 9, and 11). Appellant was also indicted for three counts of uttering under R.C. 2913.31 (counts 8, 10, and 12) and tampering with records under R.C. 2913.42 (counts 20, 21, and 22) for each of the above items.
 {¶ 12} Appellant was convicted of forgery and uttering in relation to the state of Ohio driver's license application (counts 7 and 8), forgery and uttering in relations to the BMV form 2026 (counts 9 and 10), and tampering with records in relation to the state of Ohio driver's license application.
 {¶ 13} July 20, 2004
 {¶ 14} For his criminal activity on this day, appellant was indicted for one count of forgery (count 13), uttering (count 14), and tampering with records (count 23) in relation to a state of Ohio driver's license. Appellant was convicted of all these counts.
 {¶ 15} August 14, 2004 *Page 6 
 {¶ 16} For his criminal activity on this day, appellant was indicted for one count of forgery (count 15), uttering (count 16), and tampering with records (count 24) in relation to a vehicle registration application. Appellant was convicted of tampering with records.
 {¶ 17} The court imposed nine months on the forgery charges (merged) and nine months on the uttering charges (merged), to be served concurrently. A term of two years was imposed on the tampering counts, to be served concurrently. The tampering counts and forgery counts were merged. The two-year term is to be served consecutively to the nine-month term for the uttering charges. Accordingly, appellant was sentenced to a total of two years and nine months incarceration.
 {¶ 18} CR-473878 — July 16, 2005
 {¶ 19} According to the facts in CR-473878, Tony Colagiovanni went to the BMV to renew the license plates on his vehicle. Later that night, Colagiovanni noticed that his Fifth Third Bank check card was missing. He immediately called his bank and discovered that his balance was between negative $200 and $300.
 {¶ 20} Carole Kapcar was working as a sales associate at Kaufmann's department store on that day. She remembered assisting a black male approximately six feet in height and 200 pounds make a purchase with a credit card. Ryan Feikle works for Kaufmann's as a loss prevention agent. Feikle was informed by the Garfield Heights Police Department that an individual reported his credit card being fraudulently used at a Kaufmann's department store on July 19, 2005. *Page 7 
 {¶ 21} Feikle was able to retrieve information about the transaction and a photo of the individual who made the fraudulent purchase. Kapcar was able to identify the recovered photo as the individual who made the fraudulent transaction. Feikle was also able to recover a copy of the signed receipt. Colagiovanni indicated that the receipt from Kaufmann's purportedly showed his signature, but said that the signature was not his. Colagiovanni did not recognize appellant nor did he give appellant permission to use his check card. Feikle was working at his post on
August 28, 2005. He witnessed appellant walk into the store and he immediately recognized appellant from his prior investigation. Feikle prompted the salesclerk to have appellant fill out a credit application. Feikle observed appellant fill out the application. He was then able to retrieve the application. On this application, appellant, a.k.a. Hakeem Sultaana, with a social security number ending in 9670, decided that his name was Kevin Hughley with a social security number ending in 3041.
 {¶ 22} In State v. Hughley, CR-473878, appellant was indicted on one count of receiving stolen property under R.C. 2913.51, one count of forgery under R.C. 2913.31, and one count of uttering under R.C. 2913.31. These offenses were committed on July 16, 2005. Trial commenced on July 19, 2007. Appellant waived his right to a jury trial, and the case was tried to the court. The state presented three witnesses, and the defense presented no witnesses. At the close of the state's case and again at the close of evidence, the defense moved for acquittal under Crim. R. 29. The court overruled that motion. The court found appellant guilty of the forgery *Page 8 
and uttering counts, but not guilty of the charge of receiving stolen property. On July 30, 2007, the court merged the forgery and uttering counts, imposing a term of nine months, to be served consecutive to sentences in the other two cases.
 {¶ 23} CR-481899 — February 20, 2006
 {¶ 24} According to the facts, Deano Bevelacqua is the owner of RC Auto Sales. In January of 2006, Bevelacqua bought six cars from Motorcars Honda. One of these vehicles was a 1997 Cadillac Catera. This vehicle had electrical problems and would not operate. Bevelacqua was given the title to the Catera and had the title placed in his name. He then sold the Catera to Oliver Klar who he had dealt with on many occasions. After selling Klar the Catera, Bevelacqua signed over the title to Autos Unlimited, which Klar owns. Klar never placed the Catera in his name.
 {¶ 25} Bevelacqua knew appellant owned Unique Auto Sales. Bevelacqua never employed appellant. However, on February 20, 2006, appellant appeared with Latia Barnett. Angel Lesko wrote up a deal on the Catera for JV Auto Sales. An individual known as Jamison owns JV Auto Sales, but no person from JV Auto Sales was present while the bill of sale was drafted and the car's title was signed over as "JB via K" and Barnett signed the title.[2] Bevelacqua indicated that a dealer cannot sell a car at another licensed location.
 {¶ 26} Latia Barnett met appellant on February 20, 2006 at RC Auto Sales. Appellant told Barnett that he worked at RC Auto Sales and Barnett decided to *Page 9 
purchase the Catera. The top of the purchase form indicated JB and appellant signed the form as an authorized representative. On February 24, 2006, Barnett returned to RC to pay the remaining balance of the purchase price. On this day Barnett signed another bill of sale. The top of this form indicated JB Detail. Barnett took possession of the Catera and after a few days had diagnostic service performed. The test indicated complete transmission failure. Appellant told Barnett to take the car to JB Detail because of the warranty she purchased.
 {¶ 27} Barnett took the car for servicing and has not seen the car since. Also, appellant never provided Barnett with a title to the Catera. Barnett was not able to identify a power of attorney that was purportedly signed by her. Judy Simone operates a car lot d.b.a. JB Detail and has never employed appellant. Simone declined appellant's offer to buy the Catera. Appellant fixed some electrical problems with the car, but Simone still did not want the car.
 {¶ 28} Several weeks later appellant asked Simone to put a three-month warranty on the Catera. Because the Catera ran O.K., Simone agreed to warranty the vehicle for Latia Barnett. Simone indicated the bill of sale for the Catera appeared to have JB written on the form, but she did not sell the car and never authorized appellant to use her bill of sale for the Catera.
 {¶ 29} Mark Hoy was notified by the Cleveland Police Department that Barnett purchased a vehicle but did not receive a title. Hoy indicated that title should transfer when a vehicle is sold. Hoy's investigation revealed that appellant was not licensed to sell vehicles at RC, JB, or JV. Hoy further indicated that appellant *Page 10 
never transferred title to Barnett. Angel Lesko indicated that appellant had access to Simone's bills of sale, buyer books, and permission to use the computer. Simone also allowed appellant to do deals on her lot and charged appellant a fee for each car he sold.
 {¶ 30} Lesko claimed that an individual who had no connection with the Catera scratched out letters on the bill of sale and placed a "V" over the "B." Appellant testified that he bought the car from Oliver Klar, but it was either JB or Autos Unlimited's responsibility to give Barnett the title to the car. Appellant admitted that he sold the Catera to Barnett but he never had title to the car.
 {¶ 31} In State v. Hughley, CR-481899, appellant was indicted on one count of theft under R.C. 2913.02, one count of forgery under R.C. 2913.31, one count of a title offense under R.C. 4504.19, and one count of a title offense under R.C. 4505.19. These offenses were committed on February 20, 2006. The trial commenced on July 20, 2007. Appellant waived his right to a jury trial, and the case was tried to the court. The state presented four witnesses. The defense presented one witness and appellant testified on his own behalf.
 {¶ 32} Appellant moved for acquittal under Crim. R. 29 at the close of the state's case. The court granted the motion as to the theft charge in count one, but overruled the motion as to the other charges. At the close of evidence, the defense renewed its motion for acquittal under Crim. R. 29. The court overruled the motion. The court found appellant guilty of the title offense as charged in count four, but not guilty of the forgery offense charged in count two or the title offense charged in count *Page 11 
three. The court imposed a sentence of nine months to be served consecutive with terms imposed on the other two cases.
 {¶ 33} In total, the court imposed the following consecutive sentences: 1) two years and nine months on CR-462014; 2) a nine-month term in CR-473878; and 3) a nine-month term in CR-481899, with credit for time served. The court also ordered a three-year period of postrelease control and advised appellant of his right to appeal. Appellant was found indigent, and the court ordered a transcript at state's expense and appointed counsel for the purpose of appeal. Appellant filed a timely notice of appeal, pro se, on August 22, 2007.
 {¶ 34} II.
 {¶ 35} Appellant's assignments of error provide the following:
 I. "Pursuant to R.C. 2945.75(A), defendant could only have been found guilty of tampering with records, a misdemeanor offense as opposed to a felony of the third degree."
 II. "Appellant's conviction for obtaining money by means of a counterfeit bill of sale was unsupported by the manifest weight of the evidence. (CR 491899)."
 III. "Appellant's conviction of tampering with evidence was against the manifest weight of the evidence. (CR 462014)."
 IV. "Appellant's convictions for the offenses of forgery and uttering were against the manifest weight of the evidence. (CR 473878)." *Page 12 
 V. "By failing to order a handwriting expert at state expense, the trial court severely prejudiced appellant's defense and committed reversible error. (CR 462014, CR 473878, CR 481899)."
 VI. "By imposing consecutive sentences on allied offenses of similar import under R.C. 2913.31 and R.C. 2913.42, the trial court violated the double jeopardy clause of the United States Constitution and Ohio Revised Code section 2941.41. (CR 462014)."
 VII. "The imposition of consecutive sentences totaling four years for nonviolent administrative offenses must be reversed as excessive, disproportionate and unnecessary for the protection of the public. (CR 462014, CR 473878, CR 481899)."
 {¶ 36} III.
 {¶ 37} Appellant argues in his first assignment of error that pursuant to R.C. 2945.75(A), he could only have been found guilty of tampering with records, a misdemeanor offense, as opposed to a felony of the third degree.
 {¶ 38} We find appellant's first assignment of error to have merit. R.C. 2945.75(A)(2) requires that a guilty verdict state either the degree of the offense of which the offender is found guilty or that the additional elements that make an offense one of a more serious degree are present. If neither is included, R.C. 2945.75(A)(2) directs that a guilty verdict constitutes a finding of guilty of the least *Page 13 
degree of the offense charged. State v. Pelfrey, 112 Ohio St.3d 422,2007-Ohio-256.
 {¶ 39} There is no dispute that in State v. Hughley, Case No. CR-462014, appellant was indicted for tampering with records under R.C. 2913.42 in counts 17, 18, 19, 20, 21, 22, 23, and 24. This case involved a jury. The verdict forms read that appellant was "found guilty of tampering with records in violation of 2913.42 of the Ohio Revised Code as charged in count * * *." Counts 21 and 22 were nolled and appellant was sentenced to two years on each count to run concurrently with the other cases. Since tampering with records is considered a misdemeanor of the first degree and due to the lack of specificity in the verdict forms, appellant could only be found guilty of tampering with records, a misdemeanor of the first degree.
 {¶ 40} Indeed, the state concedes as much in its brief: "The State of Ohio concedes this issue. This court must vacate Hughley's tampering felony convictions and remand to the trial court to sentence Hughley on misdemeanor counts."[3] Therefore, pursuant to R.C. 2945.75(A), appellant could only have been found guilty of tampering with records, a misdemeanor offense, as opposed to a felony of the third degree.
 {¶ 41} Accordingly, appellant's first assignment of error is sustained.
 {¶ 42} Due to the substantial interrelation between appellant's second, third, and fourth assignments of error, we shall address them together. Appellant argues *Page 14 
in his second assignment of error that his conviction for obtaining money by means of a counterfeit bill of sale was unsupported by the manifest weight of the evidence.
In evaluating a challenge to the verdict based on manifest weight of the evidence, a court sits as the thirteenth juror and intrudes its judgment into proceedings which it finds to be fatally flawed through misrepresentation or misapplication of the evidence by a trier of fact which has "lost its way." State v. Thompkins, 78 Ohio St.3d 380,1997-Ohio-52, 678 N.E.2d 541. As the Ohio Supreme Court declared:
 {¶ 43} "Weight of the evidence concerns `the inclination of thegreater amount of credible evidence offered in a trial, to support oneside of the issue rather than the other. It indicates clearly to thejury that the party having the burden of proof will be entitled to theirverdict, if, on weighing the evidence in their minds, they shall findthe greater amount of credible evidence sustains the issue which is tobe established before them. Weight is not a question of mathematics, butdepends on its effect in inducing belief.'
 {¶ 44} "* * * The court, reviewing the entire record, weighs theevidence and all reasonable inferences, considers the credibility ofwitnesses and determines whether in resolving conflicts in the evidence,the jury clearly lost its way and created such a manifest miscarriage ofjustice that the conviction must be reversed and a new trial ordered.The discretionary power to grant a new trial should be exercised only inthe exceptional case in which the evidence weighs heavily against theconviction." Id. at 387. (Internal citations omitted.) *Page 15 
 {¶ 45} However, this court should be mindful that the weight of the evidence and the credibility of witnesses are matters primarily for the trier of fact, and a reviewing court must not reverse a verdict where the trier of fact could reasonably conclude from substantial evidence that the state has proven the offense beyond a reasonable doubt.State v. DeHass (1967), 10 Ohio St.2d 230, 227 N.E.2d 212, at paragraphs one and two of the syllabus.
 {¶ 46} In the instant case, appellant maintains that any discrepancy in the bill of sale where he tried to write a "V" over the "B" was explained by Lesko's testimony. However, the trial court was permitted to credit the witnesses. The trial court did not credit Lesko or appellant's testimony. Appellant's argument is based on his and Lesko's testimony. The trial judge was in the best position to observe the witnesses and decide who to credit. Appellant has a strong motive to lie as he has been convicted of many crimes and was trying to lessen any potential sentence of incarceration.
 {¶ 47} Lesko's testimony that another person placed the "V" over the "B" on the bill of sale lacks credibility. Laura Cecil worked for many people on West 130th Street and would not have a reason to change the bill of sale. In addition, Bevelacqua and Simone both testified that appellant did not have permission to use their bills of sale or the authority to sell cars on their lots.
 {¶ 48} We find that the evidence demonstrates appellant knowingly used stolen, unlawfully obtained, and forged bills of sale to obtain money. The trial court was in the best position to decide whether to credit the state's witnesses or *Page 16 
appellant's witnesses. Appellant's conviction is supported by competent reliable evidence. We conclude that the evidence is sufficient, supports the conviction for obtaining money by means of a counterfeit bill, and is not against the manifest weight of the evidence.
 {¶ 49} Appellant argues in his third assignment of error that his conviction for tampering with evidence was against the manifest weight of the evidence. Specifically, appellant argues that the jury lost its way in finding him guilty because the state did not present any BMV workers who processed his fraudulent applications, the state failed to account for human error, and the state failed to authenticate his signature. Again, we do not find merit in appellant's argument.
 {¶ 50} The state was not required to call a BMV worker to provide competent evidence that appellant committed the crimes. Appellant filled out the forms, knowingly provided a different social security number, and was untruthful about various other questions. Moreover, a picture of appellant was taken immediately after each fraudulent transaction, verifying that he was the person who committed the crimes at issue.
 {¶ 51} Contrary to appellant's assertions, human error does not explain appellant's actions. A review of the record demonstrates that appellant was consistently untruthful about certain questions and used an incorrect social security number. Appellant's purpose in doing this becomes evident when one recalls that he went to several different BMV offices in order to complete his fraudulent transactions. This was not a case of appellant making one mistake on one form. *Page 17 
 {¶ 52} Appellant further argues that the state failed to authorize his signature and, therefore, his convictions were against the manifest weight of the evidence. However, appellant's signature was not the basis of his criminal conduct. Appellant's actions, i.e., consistently providing a different social security number and being untruthful about questions, helps expose his forgery, uttering, and tampering. The jury was aware appellant signed these documents because of the evidence presented and because appellant's picture was taken each time he engaged in the activities in question. We find no merit in appellant's human error or signature authentication arguments.
 {¶ 53} Appellant argues in his fourth assignment of error that his convictions for the offenses of forgery and uttering were against the manifest weight of the evidence. Specifically, appellant argues that the identification testimony was unreliable and no one authenticated his handwriting on the receipt.
 {¶ 54} Here, Feikle identified appellant as the individual who made the fraudulent transaction. His identification was based on his personal observations of appellant and from appellant's appearance in the photographs. Although Kapcar was unable to identify appellant at trial, she testified that the person in the photograph was the individual who made the transaction. Appellant's identification was reliable. The state was not required to authenticate appellant's handwriting on the receipt. His picture was taken while he made this transaction. There is no doubt that he used this credit card without Colagiovanni's permission. Appellant's conviction for forgery and uttering is supported by competent and reliable evidence. *Page 18 
 {¶ 55} We find that the identification testimony was reliable and based on photographs admitted at trial. In addition, the pictures showed appellant so it was not required that the handwriting be proven as appellant's.
 {¶ 56} Accordingly, we hereby overrule appellant's second, third, and fourth assignments of error.
 {¶ 57} Appellant argues in his fifth assignment of error that because the trial court failed to order a handwriting expert at state expense, it severely prejudiced appellant's defense and committed reversible error.
 {¶ 58} Appellant argues that the lower court erred in failing to provide him with a handwriting expert. However, appellant was not provided with an expert because he refused to provide exemplars, such as fingerprints, blood samples, voiceprints, lineup identifications, etc. Accordingly, he is unable to show any prejudice from the lower court's denial of continuance.
 {¶ 59} Appellant was photographed making the fraudulent purchase. The issue in regard to the signature is not critical to this case. No one else could have signed the receipt. There are pictures of appellant making this purchase, and he is unable to show prejudice from the denial of the continuance.
 {¶ 60} Accordingly, appellant's fifth assignment of error is overruled.
 {¶ 61} Due to the substantial interrelation between appellant's last two assignments of error, we shall address them together. Appellant argues in his sixth assignment of error that the trial court violated the Double Jeopardy Clause and R.C. 2941.41 when it imposed consecutive sentences on allied offenses of similar import. *Page 19 
Appellant argues in his last assignment of error that the imposition of consecutive sentences totaling four years for nonviolent administrative offenses must be reversed.
 {¶ 62} Appellant argues that his uttering and tampering with records convictions are allied offenses. However, the elements of the crimes do not correspond to such a degree that the commission of tampering with records automatically renders a person guilty of uttering. Because a person can tamper with a record without uttering the record, appellant's convictions for tampering and uttering are not allied.
 {¶ 63} R.C. 2941.25, regarding the merger of offenses, requires a two-step analysis. In the first step, the elements of the two crimes are compared. If the elements of the offenses correspond to such a degree that the commission of one crime will result in the commission of the other, the crimes are allied offenses of similar import and a court must proceed to the second step. In the second step, a defendant's conduct is reviewed to determine whether the defendant can be convicted of both offenses. If the court finds either that the crimes were committed separately or that there was a separate animus for each crime, the defendant may be convicted of both offenses. State v. Cabrales,118 Ohio St.3d 54, 2008-Ohio-1625.
 {¶ 64} The offense of tampering with records is defined by R.C. 2913.42(A) and states: "(A) No person, knowing the person has no privilege to do so, and with purpose to defraud or knowing that the person is facilitating a fraud, shall do any of *Page 20 
the following: (1) Falsify, destroy, remove, conceal, alter, deface, or mutilate any writing, computer software, data, or record; (2) Utter any writing or record, knowing it to have been tampered with as provided in R.C. 2913.42(A)(1)." State v. Rodriguez, Cuyahoga App. No. 89198,2007-Ohio-6835.
 {¶ 65} R.C. 2913.31. Forgery; identification card offenses, provides the following:
 "(A) No person, with purpose to defraud, or knowing that the person is facilitating a fraud, shall do any of the following:
 (1) Forge any writing of another without the other person's authority;
 (2) Forge any writing so that it purports to be genuine when it actually is spurious, or to be the act of another who did not authorize that act, or to have been executed at a time or place or with terms different from what in fact was the case, or to be a copy of an original when no such original existed;
 (3) Utter, or possess with purpose to utter, any writing that the person knows to have been forged. * * *."
 {¶ 66} It is possible, in the abstract, for a person to "falsify, destroy, remove, conceal, alter, deface, or mutilate any writing, computer software, data, or record," without uttering or possessing with the purpose to utter a writing. For example, if a person wants to apply for a driver's license he or she goes to the BMV and inquires as to the procedure for applying for a license. The worker explains that certain information is checked, and if the person does not have a suspended license, one can be issued. The individual goes home and hacks into the software and changes the data so that his or her suspended license is removed from the database. That *Page 21 
person has altered the data without uttering or possessing any writing with a purpose to utter.
 {¶ 67} Because, in the abstract, a person can be guilty of tampering with records without committing uttering, these crimes are not allied offenses. Accordingly, appellant was properly convicted of these crimes and should be sentenced for both. Moreover, tampering with records does not require a person to present the falsified record. The act of presenting (uttering) falsified records has a separate animus from falsifying the records.
 {¶ 68} Appellant argues in his final assignment of error that his sentence was unduly harsh, disproportional, and unnecessary. We do not find merit in appellant's final assignment of error. The lower court carefully considered appellant's past and current criminal conduct. Appellant has not provided any similarly situated offenders showing that his sentence is disproportionate. The lower court fashioned an appropriate criminal sentence for appellant's expansive and continuing criminal conduct.
 {¶ 69} Appellant argues that his sentence was excessive, disproportionate, and unnecessary. However, R.C. 2929.11(B) "does not require the trial court to engage in an analysis on the record to determine whether defendants who have committed similar crimes have received similar punishments. Rather, the statute indicates the trial court's comments made at the hearing should reflect that the court considered that aspect of the statutory purpose in fashioning the appropriate sentence." State v. Crawford, Cuyahoga App. No. 84153,2004-Ohio-5737, p. 13, *Page 22 
citing State v. Edmonson, 86 Ohio St.3d 324, 326-327, 1999-Ohio-110,715 N.E.2d 131; State v. Hunt, Cuyahoga App. No. 81305, 2003-Ohio-175.
 {¶ 70} In reviewing the trial court's comments at sentencing, it is clear that the statutory purpose was upheld in fashioning appellant's sentence. Appellant was also indicted for a number of cases. He had committed similar conduct in the past. The trial court considered appellant's vast criminal conduct in fashioning its sentence. In addition, the docket indicated that, contrary to appellant's assertions, appellant failed to report to the probation department as required and was out of the range of his home-monitoring system 43 times in a five-day period. Appellant also contacted victims, despite a court order to the contrary. We find the lower court's sentence to be proper and within the statutory guidelines.
 {¶ 71} Accordingly, appellant's sixth and seventh assignments of error are overruled.
Judgment affirmed in part, reversed in part, and remanded to the lower court for further proceedings consistent with this opinion.
It is ordered that appellee and appellant share the costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed in part, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence. *Page 23 
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
MARY EILEEN KILBANE, J., and PATRICIA ANN BLACKMON, J., CONCUR
[1] The counts that the jury rendered guilty verdicts on in this case included the following: 1) forgery (counts 1, 3, 5, 7, 9, 13, and 17); 2) uttering (counts 2, 4, 6, 8, 10, and 14); and 3) tampering with records (counts 18, 19, 20, and 23).
[2] Tr. 28.
[3] See appellee's brief, p. 7. *Page 1